George R. THURSTON, Individually, and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

Joseph C. DEKLE, as Chairman, Civil Service Board, Jacksonville, Florida, et al., Defendants-Appellants.

No. 74–4200.

United States Court of Appeals, Fifth Circuit.

May 20, 1976.

**1266**

Wm. Lee Allen, Asst. Counsel, Harry L. Shorstein, Gen. Counsel, Jacksonville, Fla., for defendants-appellants.

Robert L. Shevin, Atty. Gen., James D. Whisenand, Asst. Atty. Gen., Tallahassee, Fla., for amicus curiae.

Paul C. Doyle, Duval City Legal Aid Assoc., Carolyn S. Zisser, Jacksonville, Fla., for plaintiffs-appellees.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

CLARK, Circuit Judge:

The issue in this litigation is whether the suspension and dismissal rules of a municipality provide constitutionally adequate pretermination procedures to nonprobationary city employees. The resolution of this issue requires an analysis of *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d

15 (1974) and *Davis v. Vandiver*, 494 F.2d 830 (5th Cir. 1974). After ascertaining that jurisdiction and standing exist, we also determine the minimum due process protection against loss of nonprobationary city employment required by the Fourteenth Amendment.

The plaintiff class in this action was certified to include "all permanent civil service employees of the City of Jacksonville, who have been or will be suspended from employment. . . ." The defendants were individual members of the Civil Service Board and the director of the Department of Housing and Urban Development of the City of Jacksonville. The employees sought declaratory relief and to enjoin the city from terminating their employment absent constitutionally sufficient pretermination proceedings. In addition, they requested restitution in the form of backpay.

The named plaintiff, Thurston, was given a letter dated August 10, 1973 on August 13, 1973, which suspended him as an employee of the Department of Housing and Urban Development of the City of Jacksonville for 30 days without pay effective August 13, 1970. At the end of the suspension period he was to be discharged permanently. The letter informed him of his right to appeal. He requested an appeal. After a hearing on September 10, 1973, his suspension and termination were upheld by the City Civil Service Board.

The applicable Rules and Regulations of the Consolidated Civil Service Board of the City of Jacksonville provide that suspension and dismissal of a nonprobationary city employee may only be "for cause." [1] Suspended or dismissed employees are given a right

---

1. 12.4 DISMISSALS, DEMOTIONS AND SUSPENSIONS

(a) The Appointing Authority may suspend any employee with status only for cause, for a period not to exceed thirty (30) calendar days, after furnishing the employee, the Manager, and the Civil Service Board with a detailed written statement of the reasons for suspension. The Appointing Authority may dismiss any employee with status only for cause following any suspension of thirty (30) days. Prior to suspension or dismissal, the Appointing Authority shall furnish the employee, the Manager, and the Civil Service Board a detailed written statement of the reasons for suspension. The Civil Service Board will send a copy of the appropriate section of the Rules by registered or certified mail, return receipt requested, to any employee who has been so disciplined.

(b) Just causes for dismissal, demotion in the service or suspension are listed below although dismissal, demotion or suspension may be made for other just causes.

to appeal.[2] The appeal consists of a public hearing; the employee may have counsel present, may subpoena witnesses, and use the services of a court reporter.[3] The hear-

(1) The employee has been convicted of a felony, or of a misdemeanor involving moral turpitude.

(2) The employee has wilfully, wantonly, unreasonably, unnecessarily or through culpable negligence been guilty of brutality or cruelty to an inmate or prisoner of an institution or to a person in custody, provided the act committed was not necessarily or lawfully done in self-defense, or to protect the lives of others, or to prevent the escape of a person lawfully in custody.

(3) The employee has violated any of the principles of the merit system or these Rules.

(4) The employee has been guilty of any conduct unbecoming an officer or employee of the Consolidated Government, either on or off duty.

(5) The employee has violated any lawful official regulation or order or failed to obey any proper direction made and given by a superior officer.

(6) The employee has been under the influence of intoxicants while on duty.

(7) The employee has been guilty of insubordination or of disgraceful conduct.

(8) The employee is offensive in his conduct or language in public or towards the public, officials or employees.

(9) The employee is incompetent or inefficient in the performance of the duties of his position.

(10) The employee is careless or negligent with the moneys or other property of the government.

(11) The employee has failed to pay or make reasonable provisions for future payment of his debts to such an extent that such failure be detrimental to the reputation of the Consolidated Government Service.

(12) The employee has used or threatened to use, or attempted to use, personal or political influence in securing promotion, leave of absence, transfer, change of pay rate, or character of work.

(13) The employee has induced or has attempted to induce, an officer or employee of the Consolidated Government to commit an unlawful act or to act in violation of any lawful department or official regulation or order.

(14) The employee has taken for his personal use from any person any fee, gift, or other valuable thing in the course of his work or in connection with it, when such gift or other valuable thing is given in the hope or expectation of receiving a favor or better treatment than that accorded other persons.

(15) The employee has engaged in outside business activities on Government time, or has used Consolidated Government property for such activity in violation of Rule 11.4.

(16) The employee has failed to maintain a satisfactory attendance record.

(c) An employee with status may appeal actions under this section according to Rule 13.

(d) A dismissed employee may be required to forfeit all accrued leave.

(e) Appeal of a grievance by an employee may not of itself be used as a ground for disciplinary action.

(f) An appointing authority may suspend an employee for up to a cumulative total of three (3) days in any one calendar year without the employee having the privilege of appeal.

. . . . .

**2. 13.4 APPEAL FROM DISMISSALS, DEMOTION OR SUSPENSIONS**

Any employee with status who is dismissed, demoted or suspended (for a period of more than the cumulative total of five (5) calendar days in any one calendar year) in accordance with Rule 12 may appeal to the Civil Service Board within ten (10) days after being notified by certified mail, return receipt requested, by the Civil Service Board.

**3. 13.6 CIVIL SERVICE BOARD HEARING**

(a) Responsibility of Civil Service Board: When an employee files a complaint with the Civil Service Board in a case involving his dismissal, demotion or reduction in rank or suspension, it shall be the duty of the Board to ascertain to the best of its ability the facts of the case, and after weighing all available evidence to report its findings and decision to the appointing authority and employee, and make such other disposition as they may deem appropriate.

(b) Consideration of Complaint-Setting Date for Hearing: If a request for hearing is contained in such complaint, a public hearing shall be held thereon within (20) days after the filing of said complaint, or at such later date as the Board deems proper, at such time and place as shall be fixed by the Chairman of the Board.

(c) Notice of Hearing: Notice of the time and place for public hearing shall be given promptly by the Secretary of the Board to the complainant and at least seven (7) days prior to the hearing by Registered Mail, addressed to the complainant at his last known post office address.

(d) Board Shall Have Access to Pertinent Data: In order to properly discharge its function in regard to the review of such disciplinary actions, the Board shall have access to any files, correspondence, memoranda, etc., which they feel might be pertinent to the case and shall have the right of questioning any officers or employees of the Consolidated

ing must take place within 20 days of its request.[4]

The lower court determined that these civil service rules violated due process. An injunction issued preventing suspension or dismissal without pay of any nonprobationary employee without prior notice and an opportunity for a hearing until the city had promulgated sufficient procedural safeguards which were specifically designed to minimize the risk of error attendant to initial removal.

Government whom they feel may be able to shed light on the circumstances involving the disciplinary action in question. No officer or employee shall himself be subject to disciplinary action as a result of his testimony given in such hearing except in case of perjury.

(e) Scope of the Civil Service Board's Review: In its review of a disciplinary action, the Civil Service Board shall limit itself, in the absence of over-riding cause for considering extraneous matters, to a consideration of: (1) the question of the appropriateness of the discipline to the transgression, with regard to the case under consideration, and (2) the question of whether the employee is guilty of the transgression with which he is charged.

(f) Hearings to be informal: Hearings shall be conducted in an informal manner with every effort made by the Civil Service Board to avoid the appearance of conducting a trial as in a court of law.

(g) Adjournments: Public hearings on complaints may be adjourned only upon good cause shown, and in the event that the complainant shall fail to appear in person or by counsel at the time and place set for hearing, he shall be presumed to have waived his right to further hearing and the Board may proceed forthwith to investigate and determine the case.

(h) Representation: Complainants may, at their election, be represented by counsel. The Civil Service Board and the Appointing Authority may be represented by counsel provided by the City Attorney.

(i) Subpoenas: Complainants and appointing authorities involved in a disciplinary action hearing before the Civil Service Board may file with the Board the names and addresses of persons to be subpoenaed by the Civil Service Board to testify during such proceedings.

(j) Court Reporter: Complainant may retain the services of a Court Reporter to record the proceedings at his own expense.

(k) Conduct of Hearings: Hearings before the Civil Service Board shall be public and

## I. Subject Matter Jurisdiction

■ Thurston rests jurisdiction for this action upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. The City of Jacksonville claims this suit is, in reality, a suit against the city; that the jurisdictional grant included in 42 U.S.C. § 1983 is limited to suits against "persons"; that municipalities are not persons; and therefore, suits against municipalities are not allowed under § 1983. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). This

shall be conducted in an orderly manner with a view to the presentation of material facts so that a fair and impartial decision may be made. The Chairman of the Board shall have full authority at all times to maintain orderly procedure and to reject irrelevant matters and limit the hearings to relevant facts.

(*l*) Either the complainant or the Appointing Authority may require that all witnesses, except for the one testifying, the representatives of the Department Head and the complainant, be excused from the hearing.

(m) Decisions: The decision of the Civil Service Board shall be promptly reduced to writing, setting forth its findings and decision, and be filed with the Personnel Manager with copy to the Mayor. The Board's decision may be as follows:

(1) The Board may concur in the action of demotion, dismissal or suspension.

(2) If the Board finds that the action complained of was taken by the Appointing Authority for any political, religious, or ethnic reasons, the Board shall reinstate the employee to his former position or a position of like status and pay, without loss of pay for the period of his dismissal, demotion, or suspension and without penalization.

(3) In all other cases the findings and decisions of the Board may be to reinstate the employee with or without pay for the period of the dismissal, demotion, or suspension, or modify the original decision of discharge, demotion or suspension.

(4) When any employee is dismissed and not reinstated after such appeal, the Board in its discretion may recommend that his name be placed on any appropriate reemployment list for employment in any similar position other than the one from which he has been removed.

**4.** See note 3, *supra.*

claim misses the mark. Obviously aware of *Kenosha's* jurisdictional bar, plaintiffs brought the instant litigation against *individual* members of municipal agencies in their *official* capacities. Such suits are cognizable under § 1983's jurisdictional grant. *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5th Cir. 1976) (en banc).

■ However, as in *Muzquiz,* the plaintiffs in the instant action seek not only declaratory and injunctive relief, but also restitution. In *Muzquiz* we refused to allow § 1983 suits against the individual members of a municipal board or agency for restitution or damages where the practical effect was to use those defendants as conduits to the city treasury. The lower court's award of backpay to class members, therefore, must be reversed for lack of subject matter jurisdiction.

## II. Standing

■ Although the lower court lacked subject matter jurisdiction to hear Thurston's claim seeking backpay on behalf of himself and members of the class, it did not lack subject matter jurisdiction to hear a claim requesting a declaratory judgment that Jacksonville's pretermination procedures are unconstitutional and an injunction preventing unconstitutional employment termination. But, before a court of the United States has the power under Art. III, § 2 of the Constitution to hear a particular claim, it must be presented in a solid adversary context. *Muskrat v. United States,* 219 S.Ct. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). In other words, there must exist a case or controversy.

The threshold case-or-controversy inquiry is whether there existed a named plaintiff with standing to raise the issue before the court. The hindsight provided by *Muzquiz* now enables us to clearly see that Thurston never did satisfy the traditional tests which would indicate he had standing to present this class' claims.

■ When this suit was instituted, there were three categories of individuals who could have had standing to raise this issue: First, an employee who had been suspended without pay and whose termination had been upheld on appeal to the Civil Service Board; second, an employee who had been suspended without pay but who had not yet received a post-termination appeal by the Civil Service Board; and third, an employee threatened with suspension without pay.

Thurston was suspended without pay on August 13, 1973; his termination was upheld on appeal by the Civil Service Board on September 10, 1973. The instant action was not filed until September 26, 1973. Therefore, Thurston's standing must be found in the first category. Thurston does not attack his final termination; his claim is only directed to the initial suspension without pay absent constitutional pretermination protection. The only remedy he could invoke was backpay for the period of time between his initial suspension without pay and the date he was entitled to post-termination procedures. Therefore, Thurston's standing to attack the pretermination procedure is solely limited to his claim for backpay—relief which *Muzquiz* now teaches the court lacked jurisdiction to grant.

Thurston is the only named plaintiff in this action preserved on appeal. The court lacked jurisdiction to hear any claim Thurston had standing to raise and Thurston lacks standing to raise any claim the court had jurisdiction to hear. The net result is that there was no named plaintiff with standing to question Jacksonville's pretermination procedures at the time this litigation was filed.

■ The fact that some members of the class may have had standing to raise this claim is irrelevant. The record does not disclose that any class member had ever been in either the second or third category discussed above. But, more importantly, the necessary requirement is for a *named* plaintiff to have standing at the time the

litigation is filed.[5] We are unaware of any case where any federal court has reached a substantive issue absent a named plaintiff who had standing at the time the action was filed. We are also confident that had *Muzquiz* been available to it, the lower court would not have heard this action.

■ Thurston's standing was not factually mooted; it fell away because of a subsequent legal interpretation. Thus, we are not faced here with a named plaintiff whose standing has been mooted by a fact occurring subsequent to the filing of his case. This kind of fact-created mootness is common-place when plaintiffs attack pretermination procedures or residency requirements. The law is settled that such fact-created mootness will not prevent the complete hearing of a case when such a refusal to proceed would enable the case to continue to evade review.[6]

■ Use of the conventional form of standing analysis leads to the conclusion that this case should be reversed because no named plaintiff had standing. However, to do so exalts form over substance because such a formalistic approach never pauses to look past the usual procedural requisites to test for the basic substance these procedures seek to enforce.[7] *Muzquiz*, which denied subject matter jurisdiction to Thurston, and thereby took away his standing, was unknown to the parties and the lower court throughout the trial. Both parties briefed and argued this case with a vigor nurtured by ignorance of an upcoming en banc reversal of the panel opinion that provided vitality to Thurston's side of this case. Throughout this case Thurston believed (as did the lower court) that he had a real stake in the outcome. Thus it would not serve standing's ultimate purpose to hold that the adversary context that truly prevailed throughout the cause was somehow lost even before Thurston, or any other party, or the court knew it was gone.[8]

To reverse this case on the ground of lack of standing will predictably result in another attack on these same ordinances before the same trial court by some other City of Jacksonville employee. Such a procedure would add naught but further cost to the expense already incurred by *both* the city and the affected class and another case to the congestion of both the district and appellate court dockets.[9] A decision which would accomplish no more than relitigation

---

5. *Sosna v. Iowa,* 419 U.S. 393, 397, 95 S.Ct. 553, 557–58, 42 L.Ed.2d 532, 539 (1975); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

6. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *accord, Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975); *see Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

7. In *Franks v. Bowman Transportation Co.,* —— U.S. ——, ——, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444, 456 (1976), the Court focused on the need to examine the policies which underlie the concepts of justiciability.
Insofar as the concept of mootness defines constitutionally minimal conditions for the invocation of federal judicial power, its meaning and scope, as with all concepts of justiciability, must be derived from the fundamental policies informing the "cases and controversies" limitation imposed by Art. III.

8. Have the [parties] alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of standing.
*Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962).
In discussing standing in *Flast v. Cohen,* 392 U.S. 83, 106, 88 S.Ct. 1942, 1955–56, 20 L.Ed.2d 947, 965 (1968) the Court wanted to ensure that
the questions will be framed with the necessary specificity, that the issues will be contested with the necessary adverseness and that the litigation will be pursued with the necessary vigor to assure that the constitutional challenge will be made in a form traditionally thought to be capable of judicial resolution.

9. *See* Hruska, *The Commission on Revision of the Federal Court Appellate System: A Legislative History,* 1974 Ariz.St.L.J. 579; Leven & Fickler, *Realignment of the Fifth Circuit: A Necessary First Step,* 46 Miss.L.J. 659, 663–64 (1975); Wright, *The Overloaded Fifth-Circuit: A Crisis in Judicial Administration,* 42 Texas L.Rev. 949 (1964).

of a controversy already adequately litigated can serve no jurisprudential purpose.

Finally, the manner in which Thurston's loss of standing occurred due to a subsequent legal decision in the case at bar is analogous to a sole named plaintiff's loss of standing due to a subsequent factual change or adjudication.[10] The same result should flow from each. That one result is couched in terms of loss of standing and the other in terms of mootness makes no real difference. The rights of the class to an adjudication of their claims should survive in either case.

Under the unique facts of this case, we hold that where the purpose of the standing requirement has been fulfilled by the presence of an adversary context which has remained concrete throughout the entire proceedings and where standing was subsequently determined not to exist because of a change in law affecting subject matter jurisdiction, this court should reach the merits.

### III. The Existence of a Property Right

 The existence of a legitimate property or liberty interest is prerequisite to the examination of any claimed threat to procedural due process.[11] The City of Jacksonville relies on *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), and *Davis v. Vandiver*, 494 F.2d 830 (5th Cir. 1974), to assert that its employees have a property interest in the retention of their employment only to the extent it is protected by the procedural safeguards in the ordinance and rules which govern their employment. Although the *Arnett* plurality opinion so states, six members of the Court unmistakably rejected that proposition. *Arnett* must be read as holding that "while the State may define what is and what is not property, once having defined those rights the Constitution defines due process . . . ." 416 U.S. at 185, 94 S.Ct. at 1659–60, 40 L.Ed.2d at 51. The existence of a nonprobationary employee's property interest in employment was not squarely presented in *Davis*.[12] It is centered on whether due process required a full-evidentiary hearing before employee termination where pretermination procedural protections were adequate to prevent plain mistakes and a full-evidentiary hearing post-termination was available.[13]

**10.** *Compare* the instant case *with Franks v. Bowman Transportation Co.,* —— U.S. ——, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), *and Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975). Without discussing either standing or mootness this court has often reversed the dismissal of class action Title VII cases remanding for determination of the merits of the class issues while affirming a finding that the named plaintiff's personal discrimination claim was meritless. The net effect for the suit on remand is to leave the class without a named plaintiff having standing. *Huff v. N. D. Cass Co.,* 485 F.2d 710 (5th Cir. 1973) (en banc); *accord, Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974); *Francis v. Allied Service Co.,* 486 F.2d 597 (5th Cir. 1973); *Smith v. Delta Air Lines,* 486 F.2d 512 (5th Cir. 1973); *Martin v. Thompson Tractor Co.,* 486 F.2d 510 (5th Cir. 1973); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969). *See also, Roberts v. Union Co.,* 487 F.2d 387 (6th Cir. 1973).

**11.** *Mathews v. Eldridge,* —— U.S. ——, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Fuentes v. Sheuin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelley,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

**12.** Neither was the issue presented in *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir. 1975). *Morgan* only held that a full-evidentiary, pretermination hearing was not required. In *Morgan* the employees received pretermination protection similar to that provided by the regulations at issue in *Arnett* and *Davis.*

**13.** Similar procedures to those used in *Arnett* were employed with respect to Davis' termination. Davis was provided with notice of the charge and granted a reasonable opportunity to respond prior to his discharge.[1] Subsequent to his dismissal he was afforded a

■ City employment which allows termination only for cause creates a constitutionally protectable property interest.[14] Once created, the employment property interest may not be taken away without due process.[15] Civil Service Board Rule 12.4 allows suspension and dismissal of an employee "only for cause."[16] Therefore, the plaintiff employees of the City of Jacksonville have a legitimate property interest in the continuation of their employment.

## IV. Pretermination Proceedings

Even though the plaintiffs possess a property interest in their employment, due process does not mandate that they be accorded a full-evidentiary hearing prior to employment termination.[17] The suspension and termination regulations of the City of Jacksonville require that an employee be given a "detailed written statement" of the reasons for suspension prior to suspension. The employee may then immediately be suspended without pay for 30 days. At the end of this suspension period if the employee has not successfully prosecuted an appeal he automatically would be permanently dismissed. The only pretermination procedural protection a City of Jacksonville employee receives is a written statement listing the reasons for discharge.

■ The City argues that its employees may seek review of their suspension without pay. During this period of suspension without pay, however, the employees lose all benefits of employment. In addition, the suspension automatically becomes termination unless the Civil Service Board on review orders reinstatement and backpay. The lower court correctly saw this suspension process as no more than a facade. It held that "in reality, 'suspension' under the present state of facts . . . is in the functional equivalent of *permanent discharge* subject to the condition subsequent that an employee may be reinstated with backpay upon successful appeal." Since suspension without pay is in reality termination, the city must provide whatever pretermination procedures the Constitution mandates prior to suspension without pay.[18]

To determine the extent of due process procedures necessary to protect against the wrongful taking of property from an employee, a balance must be struck between the government's and the employee's respective interests.[19] The government interest in efficient city operation is a weighty one. Requiring elaborate pretermination procedures or the payment of wages to misbehaving or unproductive employees militates against that interest. On the other

---

full-scale evidentiary hearing presided over by a hearing examiner. *Arnett* demands no more.

[1] In the notice of proposed removal, the detachment commander also informed him of the following prerogatives: (1) if Davis chose to reply orally, he could be accompanied by a representative of his choice; (2) he could submit affidavits to support his answer; (3) if he did not understand the reasons for the proposed removal he could contact the detachment personnel officer for further explanation; (4) he would be allowed eight hours of official time to review the material and prepare an answer; (5) material relied on by the charging party would be available to Davis for his examination.

*Davis v. Vandiver*, 494 F.2d 830, 832–33 (5th Cir. 1974).

**14.** *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Kaprelian v. Texas Woman's University*, 509 F.2d 133, 137 (5th Cir. 1975).

**15.** *See* Comment, *Student Rights and Due Process: Procedural Requirements of Goss v. Lopez*, 46 Miss.L.J. 1041, 1050–54 (1975).

**16.** See note 1, *supra.*

**17.** *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975); *Davis v. Vandiver*, 494 F.2d 830 (5th Cir. 1975).

**18.** *See Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736–37, 42 L.Ed.2d 725, 734 (1975).

**19.** *Mathews v. Eldridge*, —— U.S. ——, ——, 96 S.Ct. 893, 47 L.Ed.2d 18, (1976); *Goss v. Lopez*, 419 U.S. 565, 577, 95 S.Ct. 729, 738–41, 42 L.Ed.2d 725, 737 (1975); *Goldberg v. Kelley*, 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, 296 (1970); *see* Comment, *supra* note 15, at 1059–60.

hand, the immediate termination of an employee's wages and other benefits deserves protection from possible errors. Ideally, the balance would seek to minimize the risk of wrongful termination to an employee without burdening the government with elaborate pretermination proceedings. In both *Arnett* and *Davis* the applicable regulations required that prior to termination an employee be furnished with specific written reasons for termination and that he or she be given a reasonable time to study the reasons and an opportunity to respond in writing and orally to the official with responsibility for making the termination decision. This opportunity to explain was held to have sufficiently minimized the risk of wrongful initial termination so that postponement of a full-evidentiary hearing to post-termination passed constitutional muster.

Although both *Arnett* and *Davis* approved these regulations as being sufficient to meet the requirements of due process, neither case mandated the creation of any procedure as being prerequisite to the meeting of minimal pretermination due process requirements. *Arnett* and *Davis* only approved existing rules; they did not require new ones.

■ Since this order commands city action we must define the minimum pretermination procedural elements required by the due process clause of the Fourteenth Amendment. *Arnett* and *Davis* guide us to focus on procedures which will minimize the risk of improper termination associated with any dismissal process. Where a governmental employer chooses to postpone the opportunity of a nonprobationary employee to secure a full-evidentiary hearing until after dismissal, risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons.[20] Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision.[21]

The lower court's order could reasonably be interpreted as requiring that full-evidentiary pretermination hearings be accorded to all employees in the plaintiff class until the city has promulgated sufficient safeguards which would minimize that risk of error. Even though the city has not yet promulgated sufficient procedural safeguards, the Constitution does not require this much.[22] However, since the district court's injunction is also reasonably susceptible to the interpretation that an employee must be given an opportunity, prior to suspension, to effectively respond to the reasons given for suspension, we place that construction on it.

■ The district court correctly recognized that there could be "extraordinary situations" where even these minimal pretermination procedures would be improper. The court required the city to promulgate specific criteria which would allow for an objective determination of when such an "extraordinary situation" might exist. It broadly outlined "extraordinary situations" to include circumstances where retention would result in damage to municipal property, would be detrimental to the interest of city government or would result in injury to the employee, to a fellow employee or to the general public. Even in these situations the court required that an employee be given written notice of the specific reasons for termination within 24 hours and also to be given an opportunity for an evidentiary hearing within 20 days. *Arnett* recognized and implicitly approved similar "extraordinary situation" procedures.

**20.** *Muscare v. Quinn*, 520 F.2d 1212 (7th Cir. 1975), *dismissed as improvidently granted,* —— U.S. ——, 96 S.Ct. 1752, 48 L.Ed.2d 165, 44 U.S.L.W. 4627 (1976).

**21.** *Id.*

**22.** *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975); *Davis v. Vandiver*, 494 F.2d 830 (5th Cir. 1975).

The order of the lower court concerning the payment of backpay is REVERSED for lack of subject matter jurisdiction. The lower court's order requiring additional pretermination procedures to minimize the risk of error associated with initial termination is AFFIRMED.