Lawrence A. CARASTRO, Plaintiff,

v.

J. Martin GAINER, Individually, and as City Manager of the City of Coral Gables, et al., Defendants.

No. 76–1375–CIV–SMA.

United States District Court, S. D. Florida.

May 27, 1977.

Douglas L. Williams, Miami, Fla., for plaintiff.

Robert D. Zahner, Coral Gables, Fla., for defendants.

## MEMORANDUM OPINION

ARONOVITZ, District Judge.

This cause came on for non-jury trial on May 20, 1976, upon the Complaint and Supplemental Complaint of the plaintiff, Lawrence A. Carastro, for a permanent mandatory injunction ordering his reinstatement to the Police Department of the City of Coral Gables, Florida, and for monetary damages for alleged violations of his civil rights under 42 U.S.C. Sec. 1983 against defendants J. Martin Gainer, individually and as the City Manager of Coral Gables, William G. Kimbrough, individually and as former Chief of Police of Coral Gables, and Delbert F. Edwards, individually and as Chief of Police of Coral Gables.[1] Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3). For the reasons which follow the relief sought by Plaintiff will be denied and a Final Judgment will be entered in favor of the defendants.

## FACTUAL BACKGROUND

This case was initiated on August 16, 1976 by two former police officers of Coral Gables against Gainer, Kimbrough and the City of Coral Gables claiming a violation of their civil rights as a consequence of their removal from the police department for alleged "conduct unbecoming a police officer."

Upon motion of the complainants and after conducting an evidentiary hearing, this Court, through its predecessor, entered a preliminary injunction on September 15, 1976 reinstating the officers with back pay and enjoining their future suspension or termination without a prior hearing affording them due process:

". . . Plaintiffs were terminated from their employment as police officers without a hearing having the fundamentals of due process. Although the Court does not at this time rule upon the constitutionality of Coral Gables Code Sec. 25, on its face, the Court does find that said ordinance was applied by the Defendants to Plaintiffs in an unconstitutional fashion in that Plaintiffs are entitled to a pre-termination hearing containing the basic elements of procedural due process before they can be deprived of their proprietary interests in employment."[2]

Thereafter, Carastro (the plaintiff herein) and another Coral Gables police officer, both of whom had been terminated from employment in a manner similar to that of the original two complainants, sought leave to intervene as plaintiffs. The Court granted intervention and issued identical preliminary injunctions as to Carastro and the other officer, on September 24, 1976 and October 6, 1976, respectively.

Pursuant to the Court's preliminary injunction and Section 25 of the Charter, the Trial Board consisting of five members was convened on November 8, 1976 to hear and review the charges against Carastro.[3] Ca-

---

1. The Supplemental Complaint originally named only Gainer and Kimbrough as defendants. During the pendency of the action Kimbrough resigned as Chief of Police and was replaced by Edwards. Thereafter, Edwards was added as a defendant by stipulation of the parties.

2. The "Coral Gables Code Sec. 25" referred to is Section 25 of the Charter of the City of Coral Gables, Florida (defendants' Exhibit 1), which delineates the procedure to be followed regarding discharged city employees. It provides in appropriate circumstances for the convening of a Trial Board to review the actions of the City Manager in removing, suspending, or demoting certain employees (including, as herein, police officers). Upon compliance with various prerequisites, the

". . . trial board shall thereupon investigate and determine the propriety of such action, and, at the conclusion of its investigation shall render a decision or verdict which shall be final. The trial board may, in its discretion, conduct hearings, summon witnesses and hear evidence. In its decision the trial board may determine whether such officer or employee is entitled to any compensation; allowance or adjustment, which decision shall likewise be final."

3. The original complainants apparently resigned shortly after their reinstatement and stipulated to a dismissal with prejudice of their action on October 14, 1976. The charges against the other intervening plaintiff were subsequently dropped, and he filed a notice of voluntary dismissal on December 20, 1976.

rastro had previously been given detailed notice of the four reasons for his attempted dismissal by letter from the City Manager dated July 28, 1976 (Plaintiff's Exhibit 1).[4] After three separate sessions on November 8, 11 and 26, the Trial Board made the following decisions, as summarized in the Board's letter of December 1, 1976 to the City Clerk. (Plaintiff's Exhibit 4):

1) Charges 2 and 4 were dismissed unanimously;

2) Carastro was found guilty of Charge No. 1 by a vote of 3–2; and of Charge No. 3 by a 4–1 vote;

3) Carastro's dismissal was upheld by a 3–2 vote as to Charge No. 1 and a 4–1 vote as to Charge No. 3. (Board Member McGee, who had voted not guilty as to Charge No. 1, voted to uphold the dismissal in respect to Charge No. 3 only).

On December 3, 1976, Carastro filed his Supplemental Complaint alleging that the hearings before the Trial Board were conducted in a manner which deprived him of due process. Thereafter, these proceedings were held before the Court to review those allegations.

## I.

### THE MERITS OF PLAINTIFF'S CLAIMS

■ At the outset, the Court notes that its role in reviewing the procedures before

the Trial Board is a limited one. The District Court is not expected to conduct a de novo hearing. Rather, the initial inquiry is whether or not federal rights have been violated in the procedures of the Board based upon an examination of the record. If not, the Court must then view the record to determine whether substantial evidence supports the action of the Board. Cf. Stapp v. Avoyelles Parish School Board, 545 F.2d 527 (5th Cir. 1977); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970).

■ Did the procedures used by the Trial Board violate Carastro's right to due process? It is well settled that a person may not be deprived of his property or liberty by a governmental entity or its officials without the fundamentals of procedural due process. See, e. g. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Neither is it subject to question that Carastro's employment as a police officer with the City of Coral Gables is a constitutionally protectable property interest which cannot be taken without due process.[5]

However, the nature of the process that is due is not subject to rigid definition. "(T)he standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the

Thus, only Carastro remains before the Court as a party plaintiff.

4. The charges against Carastro were as follows:

1) For conduct unbecoming a Police Officer by criminal solicitation of a minor female by encouraging her to consume alcoholic beverages and being in her company at a place that serves alcoholic beverages, on or about July 13, 1976 at approximately 12:15 A.M. and in so encouraging said minor to consume alcoholic drinks, the minor became highly intoxicated and was found lying on the side of a road at approximately 4700 Red Road, South Miami, Florida.

2) For conduct unbecoming a Police Officer by the use of drugs, consisting of marijuana and/or pills, on or about the weekend of July 4, 1976.

3) For conduct unbecoming a Police Officer by being naked with a minor female in the

presence of other parties in your apartment, on or about the weekend of July 4, 1976, at 1509 Venera Avenue in Coral Gables, Florida.

4) For conduct unbecoming a Police Officer by leaving a minor female who was running away from home, and in an intoxicated condition, in the vicinity of the Coral Gables Police Station, on or about July 6, 1976.

5. Section 25 of the Charter provides for removal only for "cause", and thus Coral Gables police officers have a legitimate property interest in the continuation of their employment. Thurston v. Dekle, 531 F.2d 1264 (5th Cir. 1976). Accordingly, Defendants' reliance upon the recent Supreme Court decision in Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) is misplaced since the Court there held that the plaintiff had no such property interest under North Carolina law.

light of the parties, the subject matter and the circumstances involved." *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970).

Different courts have reached different formulations as to what constitutes due process in administrative hearings. It is important to note that we are not dealing here with a *criminal* prosecution, and thus Carastro is not automatically entitled to "the full panoply of rights due a defendant in such a proceeding." *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *See also Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir. 1976).

In *Schrank v. Bliss*, 412 F.Supp. 28 (N.D. Fla.1976), wherein a county deputy sheriff obtained a preliminary injunction of reinstatement for improper termination, the District Court delineated the "fundamentals" of procedural due process: (1) a hearing (2) before an impartial decision-maker, after (3) notice of the charges, and (4) with an opportunity to present one's own case.

In another context, that of dismissal of a teacher from a state university, the Fifth Circuit in *Ferguson v. Thomas, supra* laid down a similar set of guidelines for procedural due process: (1) sufficiently detailed notice of the causes for termination; (2) notice of the names and nature of the testimony of adverse witnesses; (3) meaningful opportunity to be heard in defense; and (4) a hearing before a qualified and impartial tribunal.

Plaintiff suggests the adoption of an even more comprehensive list of procedural safeguards as expressed in *Weyenberg v. Town of Menasha*, 401 F.Supp. 801 (E.D. Wis.1975).

■ Applying even the more elaborate standards of *Weyenberg* to the facts of the instant case, the Court finds that the proceedings of the Trial Board were not violative of Plaintiff's due process rights. To begin with, Plaintiff received detailed notice of the charges against him within a few days of his initial dismissal of July 23, 1976. (Plaintiff's Exhibit 1). Plaintiff was afforded an extensive evidentiary hearing; the transcripts of the three separate sessions of the Trial Board proceedings run close to 500 pages. The procedures were fairly conducted inasmuch as rules of evidence were substantially adhered to. Witnesses were subpoenaed and ten witnesses testified before the Trial Board. Plaintiff was represented by counsel throughout the hearing, and counsel even conducted discovery of witnesses in advance of the hearing. Plaintiff had the opportunity to be heard and to present his defense although he himself chose not to testify on advice of counsel. Finally, the neutrality of the Trial Board panel cannot be questioned. Indeed, Board unanimously dismissed two of the charges against Carastro. The Court finds, therefore, that the proceedings of the Trial Board were more than adequate in the context of an administrative hearing and were not in any way a "Kangaroo Court." [6]

■ Although the Court is convinced that Plaintiff was not deprived of due process in the proceedings before the Trial Board, three arguments advanced merit further discussion. First, Plaintiff claims he was denied the right to confront his accusers in that the "minor female" referred to in the charges against him did not testify before Trial Board. This argument must fall in light of the fact that the Board did hear testimony from witnesses who were present at the time the incidents occurred, and such testimony was more than sufficient to enable the Board to conclude that Carastro had in fact committed the acts charged.

■ Secondly, Plaintiff asserts he was unconstitutionally denied the opportunity to cross-examine a crucial witness, Allison Suzanne Thompkins. The parties have stipulated that Thompkins was the only substantive witness called to testify against Carastro as to Charge No. 3. But even assuming *arguendo* that Plaintiff's counsel was not

6. The Trial Board in fact was so solicitous of Plaintiff's rights that counsel for Defendants felt constrained to remind the Board that it was not conducting a strict criminal proceeding. (Transcript, Nov. 8, 1976 at pp. 21–22).

afforded a full opportunity to cross-examine Thompkins as her testimony pertained to Charge No. 3, Plaintiff would still not be entitled to relief. Significantly, the Trial Board found Carastro "guilty" of Charge No. 3 *and* Charge No. 1 and voted to uphold his termination on Charge No. 1 by a 3–2 vote. As to Charge No. 1, there was testimony of numerous other witnesses, who were subject to full cross-examination, which amply supported the finding of the Trial Board. Even as to Charge No. 3 which charged Carastro simply with "being naked with a minor female in the presence of another party"—Thompkins' testimony was clear and unequivocal that she and the minor were indeed naked in Carastro's presence. (Transcript, November 8, 1976 at pp. 17–18). Moreover, counsel for Plaintiff did cross-examine her as to this point. (Transcript, November 8, 1976 at pp. 59–65). Thompkins' subsequent leaving the hearing, therefore, did not rise to the level of a due process violation.[7]

 Finally, Plaintiff contends the Trial Board impermissibly drew inferences of guilt from Carastro's not having testified in his own behalf. While not unmindful of the fact that certain members of the Board did voice their opinion that Carastro should have taken the stand, the Court is not convinced that such considerations were significant in light of the more than ample credible evidence in the record to support the findings of the Board.

 In summary, the Court finds that the proceedings before the Trial Board afforded Plaintiff procedural due process, and further, that there was substantial evidence to support the findings of the Trial Board. Plaintiff is, therefore, not entitled to a permanent mandatory injunction of reinstatement with the Police Department of the City of Coral Gables or to any damages against Defendants for violation of his civil rights.[8] In this regard, the dicta of the Supreme Court in *Bishop v. Wood, supra*, is particularly appropriate:

> "The Federal Court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every error. In the absence of any claims that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." 426 U.S. 341, 96 S.Ct. at 2080.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to F.R.C.P. 52(a). A Final Judgment in favor of Defendants shall be entered simultaneously herewith.

---

7. The parties have stipulated that Thompkins was not fully cross-examined "through no fault of Plaintiff's." However, it cannot be said that the method of cross-examination by Plaintiff's counsel did not contribute to her leaving. It should be noted that the witness actually refused to answer only one specific question—whether or not she had engaged in prostitution. Her refusal to answer, although couched in layman's terms, was founded upon the 5th Amendment's privilege against self-incrimination. (Transcript, November 8, 1976 at p. 34). Counsel for Plaintiff, however, belabored the point and refused to proceed during much of the time the witness was available. The argument which followed her refusal, in her presence, and understandably embarrassing to her, consumed as many pages as her entire testimony on direct examination.

8. At trial, the Court reserved ruling on the admissibility of certain newspaper articles regarding the charges against Plaintiff (Plaintiff's Exhibit 6 for identification) offered to show the extent of the damage to Plaintiff's reputation. In view of the Court's decision herein the issue is moot; however, the Court will admit Exhibit 6 into evidence for whatever probative value it may have.