Cassandra PINSON, on behalf of herself and all others similarly situated, Plaintiff,

v.

Randy HENDRIX, North Mississippi Retardation Center, W. L. Lawhorn, Herbert Hoff, Mississippi Merit Council, Paul Cotten, W. L. Jacquith, Bill Barrett, Duane Burgis, L. G. Hopkins, Gwendolyn Loper, Gilbert MacVaugh, Jr., J. C. Williamson, Anthony Dean, State of Mississippi, Roger McMurtry, Defendants.

No. WC 78–115–OS–O.

United States District Court, N. D. Mississippi, W. D.

May 8, 1980.

Alvin O. Chambliss, Jr., Leonard McClellan, North Miss. Rural Legal Services, Oxford, Miss., for plaintiff.

Jim Brantley, Whitfield, Miss., for Hendrix, Lawhorn, Cotten, Jacquith, Barrett,

Burgis, Hopkins, Loper, MacVaugh, Williamson, Dean and McMurtry.

Peter M. Stockett, Asst. Atty. Gen., Jackson, Miss., for Hoff, Miss. Merit Council and State of Mississippi.

## MEMORANDUM OF DECISION

### ORMA R. SMITH, District Judge.

This action is before the court for final disposition pursuant to an agreed statement of facts which has been filed by the parties. After the stipulation of all relevant facts in the pretrial order, and after the presentation of oral argument at which the parties introduced certain documentary exhibits, this matter is now ripe for decision. This memorandum will contain the court's findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

The following facts have been stipulated by the parties, and made a part of the pretrial order filed on March 17, 1980:

1. Plaintiff is a black female former employee of the North Mississippi Retardation Center (NMRC) in Oxford, Mississippi.

2. Plaintiff was an unmarried employee with status (tenure) who had worked at the center for a cumulative period of over two years, and she was in the third trimester of pregnancy at the time her employment was terminated by the center.

3. The American National Insurance Company was the carrier of the NMRC group plan and plaintiff did not know her status under the insurance policy until 1979, after her child was born.

4. A report of mistreatment of a patient by plaintiff was received by the NMRC officials on or around August 25 or 26, but the incident occurred on Wednesday, August 23, 1978.

5. Defendant Randy Hendrix, the administrator, was out of town. William Lawhorn and Roger McMurtry, the next highest officials at the center, did not witness the alleged abuse, but they did take action on the complaint in the absence of Mr. Hendrix.

6. Plaintiff was suspended on August 26, 1978, with pay, pending an investigation of the charges.

7. On August 28, 1978, plaintiff caused to be written a letter to the NMRC officials which she hand delivered, requesting that she be reinstated to her job.

8. Plaintiff was informed upon her arrival at the center, by Mr. Lawhorn and Mr. McMurtry, that they had statements from unnamed persons that she had abused a patient, and that she was terminated, effective immediately pursuant to the center's regulations.

9. Plaintiff first found out about the true name of one of her accusers, Charlotte Vaxter, on November 14, 1978, at the deposition hearing of Anthony Dean. Plaintiff had previously learned the identity of Anthony Dean as the other person bringing charges subsequent to her termination.

10. Plaintiff was not shown any documentary evidence prior to her termination of the charges or the persons making such charges against her.

11. Plaintiff was hand delivered a letter on August 28, 1978, bearing said date, from Mr. Lawhorn and Mr. McMurtry, stating that she was terminated, giving the reasons for such action and stating that she had 10 working days to appeal the decision to the director of the center.

12. Plaintiff thereafter called Mr. Randy Hendrix, the Center Director, and requested a hearing to discuss the action taken against her.

13. Mr. Hendrix did meet with plaintiff and her two attorneys, but failed to grant a hearing stating that he did not have such authority to grant such a hearing.

14. Mr. Hendrix did summarize the substance of the two unsworn statements against plaintiff but refused to disclose the identity of the witnesses and refused to allow plaintiff to examine the evidence.

15. Mr. Hendrix stated that he did not have the authority to compel employees (who were unnamed) to appear on behalf of plaintiff but he did ask plaintiff if she had any evidence to present to him other than her denial of the abuse.

16. Mr. Hendrix stated that the next step was to appeal to the Merit Council for an evidentiary/trial type hearing. Names of the witnesses would be given then, but names could not be given at the center level since witnesses could be intimidated and pressure could be brought upon witnesses by peer employees.

17. The next day, which was August 31, 1978, after the refusal of plaintiff's request for a hearing by defendants, a letter was written to Mr. Roger McMurtry requesting reconsideration of the August 30, 1978, decision. The letter questioned the fairness of the prior proceeding.

18. On the same day, August 31, 1978, a letter was forwarded to Mr. Herbert Hoff, the Director of the Mississippi Merit System in Jackson, requesting an expedited hearing in Oxford on the unfair termination of a pregnant employee.

19. The letter stated that she had not received a hearing and that due to the advanced stages of her pregnancy, she could not travel to Jackson and that she lacked the resources to do the same. Also, she was unsure of whether medical coverage, insurance and other benefits would be covered during the pendency of the appeal by the group insurance policy and she thought that a hearing would clear this up.

20. Plaintiff waited two weeks for a response from Mr. Herbert Hoff and the Mississippi Merit Council but did not receive any communications from Jackson, either from Mississippi Classification Commission or the Mississippi Merit System.

21. Plaintiff filed this action in Federal District Court on September 21, 1978.

22. Plaintiff received a letter dated September 20, 1978, stating that the appeal procedures require that plaintiff first exhaust her appeal procedures on the local level.

23. The September 20, 1978 letter from Mr. Odell L. Childers, Supervisor of the Mississippi Merit System, stated that after she had exhausted her remedies before the NMRC, she would have sixty days to appeal to the Merit Council and that the hearing, if necessary, would be in Jackson.

24. The NMRC followed the procedure established by the Mississippi Classification Commission and the Merit Council in terminating plaintiff.

25. Plaintiff has not received a hearing to date.

26. For the purposes of this lawsuit, the plaintiff has exhausted her available state administrative remedy.

27. There are no issues of fact.

28. The State of Mississippi is a party to this suit and counsel for the state are present to protect its interest.

29. The remaining parties before the court are sufficient to afford plaintiff, if she is entitled to it, any or all relief named in the complaint.

30. In the event that plaintiff is granted the relief sought, the State of Mississippi will not raise deficiency of the parties as a defense.

At the presentation of oral argument in this case, the parties introduced several documentary exhibits which were listed in the pretrial order. These exhibits have been admitted into evidence and are to be considered as part of the stipulations of fact. The following exhibits, listed below in chronological order, were admitted during oral argument:

1. Letter of August 28, 1978, from the plaintiff's attorney to the officials of NMRC, suggesting that the plaintiff had been denied due process and requesting that she be reinstated. This letter is referred to in Paragraph 7 of the stipulations of fact, *supra.* (Plaintiff's Ex. No. 4.)

2. Letter of August 28, 1978, from Messrs. Lawhorn and McMurtry, to the plaintiff, setting out the charges against the plaintiff, and informing her that her employment was terminated effective that date. The letter also informed the plaintiff of her right to appeal this decision to the director of the NMRC within 10 working days, and after that, her right to appeal to the Merit System Council within 60 days. This letter is referred to in Paragraph 11 of

the stipulations of fact, *supra*. (Plaintiff's Ex. No. 1.)

3. Letter of August 31, 1978, from plaintiff's attorney to Mr. Roger McMurtry of the NMRC, requesting a reconsideration of the defendants' actions. This letter is referred to in Paragraph 17 of the stipulations of fact, *supra*. (Plaintiff's Ex. No. 6.)

4. Letter of August 31, 1978, from plaintiff's attorney to Mr. Herbert Hoff, director of the Merit Service (Mississippi Classification System), requesting an immediate hearing. This letter is referred to in Paragraphs 18 and 19 of the stipulations of fact, *supra*. (Plaintiff's Ex. No. 3.)

5. Letter of September 7, 1978, from Randy Hendrix, Director of the NMRC, to the plaintiff, stating that he was unsure of the nature of the August 30, 1978, meeting, and informing the plaintiff that she could either present evidence at a new hearing before him or allow the previous meeting to suffice as her appeal. This letter is not referred to in the stipulations of fact, *supra*. (Plaintiff's Ex. No. 5.)

6. Letter of September 20, 1978, from Odell L. Childers, Merit System Supervisor, to the plaintiff's attorney, responding to the request made in the letter of August 31, 1978. The letter states that the plaintiff would be required to exhaust her appeal procedures at the NMRC before the Council would consider her appeal. This letter is referred to in Paragraphs 22 and 23 of the stipulations of fact, *supra*. (Plaintiff's Ex. No. 2.)

The defendant introduced into evidence the Rules and Regulations for Mississippi Merit Service, promulgated by the Mississippi Classification Commission pursuant to statutory authority. The pertinent portion of those Rules, for the purposes of this action, may be found at Section 14, entitled "Appeals". Section 14.6 of the Rules provides that an employee "with status" who is dismissed may appeal to the Merit Council. Section 14.7(a) states, in pertinent part:

> Any employee with status who is dismissed, demoted, suspended, or otherwise penalized may, within sixty (60) days after the effective date of such dismissal, demotion, suspension or penalization, appeal to the Council. Before an employee files an appeal with the Merit Council, he or she shall follow procedures set forth in Agency Complaint Procedures. Such appeal shall be in writing and shall set forth the basis for the appeal.

One day after the letter of September 20, 1978, was written by Mr. Childers of the Mississippi Classification Commission, the plaintiff filed this action against numerous defendants, requesting damages as well as injunctive and declaratory relief under 42 U.S.C. §§ 1981 & 1983, and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff contended in her complaint that the State of Mississippi, through the NMRC, had violated the Fifth and Fourteenth Amendments to the United States Constitution, by dismissing her without appropriate procedural due process. She contended that she was denied a hearing, that she was not given the opportunity to present witnesses or to cross-examine those who accused her, and that she was not given notice of the specific charges against her. She also contended that she was dismissed pursuant to racially motivated discriminatory hiring practices, and that the NMRC was unlawfully maintaining certain policies which operated to deny blacks and women equal employment opportunities.[1] The plaintiff sought to

---

1. The defendants have challenged the jurisdiction of this court under Title VII, on the grounds that the plaintiff did not allege in her complaint that she had received notice of her right to sue from the appropriate administrative authority, in this case the United States Department of Justice. *See* 42 U.S.C. § 2000e–5(f)(1). It is true that before the plaintiff can resort to the private remedy provided in Title VII, she must first exhaust her administrative remedies. *East v. Romine, Inc.*, 518 F.2d 332 (5th Cir. 1975); *Beverly v. Lone Star Lead Constr. Co.*, 437 F.2d 1136 (5th Cir. 1971). Failure to plead and prove the receipt of a right-to-sue letter is, therefore, a jurisdictional defect to plaintiff's Title VII claim. Plaintiff attempted to supplement the pretrial order with a copy of a letter received from the Justice Department, dated April 1, 1980, but the court denied this motion as untimely. The court con-

maintain this action as a class action, on behalf of all employees at the NMRC "who are in danger of termination of their employment . . . without adequate safeguards. . . ."[2]

The only contested issue before the court is whether or not the procedures which were followed in this case were sufficient to satisfy the required standards of procedural due process which must be afforded tenured public employees. To resolve that issue requires this court to analyze the settled case law in this area.

■ Plaintiff relies upon the Supreme Court's decisions in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); and *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), in contending that she has been denied the guarantees of due process. Taken together, all of these decisions lead to the now settled principle that a public employee who has some legally cognizable property interest in continued employment is guaranteed a certain amount of procedural protection by the Constitution before being permanently deprived of that interest. This property interest in employment sufficient to invoke procedural due process protections must be found by a reference to state law. *Bishop v. Wood*, 426 U.S. at 344, 96 S.Ct. at 2077, 48 L.Ed.2d at 690. *See also, Glenn v. Newman*, 614 F.2d 467, 471 (5th Cir. 1980).

■ In this case, the plaintiff's interest in her employment is clearly defined by state law. An enforceable expectation of continued employment is established in Miss.Code Ann. §§ 21–31–21 & 21–31–23 (1972), which provide that any person in the state civil service may not be discharged except for cause. The principle that such an expectation of continued employment is an enforceable property right has also been recognized by the Supreme Court of Mississippi. *Little v. City of Jackson*, 375 So.2d 1031, 1034 (Miss. 1979); *City of Meridian v. Davidson*, 211 Miss. 683, 53 So.2d 48 (1951). Starting, therefore, with the premise that the plaintiff had a property interest deserving protection, the question is whether or not the stipulated facts prove the absence of procedural due process.

■ As the Court of Appeals for the Fifth Circuit has recently stated, it is now "well established that there must be *some* form of hearing before deprivation of a constitutionally protected property interest." *Glenn v. Newman*, 614 F.2d at 472, citing *Board of Regents v. Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705, 33 L.Ed.2d at 556 (emphasis in original). There is a broad range of settings in which hearings of this type can take place, and the manner and form of such hearings must necessarily vary, depending upon such factors as "the interests involved and the nature of the subsequent proceedings." 614 F.2d at 472. As *Glenn* points out, however, each one of these procedures must still meet minimum due process requirements. These requirements were established in this Circuit in *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). In *Thurston*, the court discussed the Supreme Court's opinion in *Arnett*, as well as the Fifth Circuit's opinion in *Davis v. Vandiver*, 494 F.2d 830 (5th Cir. 1974). In both of those cases, the regulations which were approved by the courts

required that prior to termination an employee [must] be furnished with specific written reasons for termination and that he or she [must] be given a reasonable

cludes, therefore, that the plaintiff's complaint fails to state a cause of action based on Title VII.

2. On August 1, 1979, this court entered an order providing that this action would not be maintained and would not proceed as a class action, because of the plaintiff's failure to comply with Rule C–7 of the Local Rules of this court. That rule provides that in all cases filed as class actions, "the class plaintiff *must*, not later than 60 days after filing of answer, move for a Rule 23 class determination." (Emphasis added.)

time to study the reasons and an opportunity to respond in writing and orally to the official with responsibility for making the termination decision. This opportunity to explain was held to have sufficiently minimized the risk of wrongful initial termination so that postponement of a full evidentiary hearing to posttermination passed constitutional muster.

531 F.2d at 1273. In other words, the governmental interest in the efficient operation of governmental functions outweighs the employee's interest *prior* to termination, such that a pretermination hearing is not required.[3] Where, as in most cases, the employer postpones the full-evidentiary hearing until after dismissal, certain procedures must be instituted which will reduce the risk that the employee's property will be taken wrongfully. The court in *Thurston* held that these procedures "*must* include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision." 531 F.2d at 1273.

Applying these procedures to the particular fact situation, this court is guided by the decision of the Court of Appeals in *Webb v. Dillon*, 593 F.2d 656 (5th Cir. 1979). In that case, a probation officer with the Juvenile Court of Fulton County, Georgia, was dismissed after a period of probation and suspension. After the dismissal was upheld on appeal to the County Personnel Board, the plaintiff sought judicial relief. The court held, however, that "the procedures employed in terminating Webb comported with due process." 593 F.2d at 658. That conclusion was warranted by the fact that the plaintiff had been informed by his supervisors that they were dissatisfied, he had received written notice of the reasons for the termination of his employment, and after the termination he had received a full evidentiary hearing. Under the holding of

*Thurston*, this was all that was required to comply with the minimum standards of procedural due process.

There are two factual distinctions which may be drawn between *Webb* and the instant case. First, in *Webb* the plaintiff was placed on probation for a period of time, was then suspended without pay, and only after that was he dismissed. In this case, the process was less gradual, for the plaintiff was suspended with pay only three days after the incident occurred, and was dismissed two days after her suspension. For the purposes of this action, however, the distinction is unimportant, because the plaintiff does not challenge the applicable suspension and termination regulations of the NMRC. If such a challenge were at issue here, it would really be a question of whether or not the defendants complied with the state statutes and rules, and the plaintiff has stipulated that they have. *See* Paragraph 24 of the stipulations of fact. Even if the plaintiff were to challenge these regulations, the court would be quick to point out that the state has an interest in maintaining the efficient operation of its facilities, particularly in settings such as the present one, where employees care for mentally retarded patients. That interest must, of course, be balanced against the employee's constitutionally protected property interest. *See Thurston v. Deckle*, 531 F.2d at 1272. To require the state in all cases to retain on the payroll an employee suspected of wrongdoing would amount to an administrative burden so great that the court could not achieve the proper balancing of interests.

The second distinction between *Webb* and the instant case is a more important one. In *Webb*, the plaintiff was given a full evidentiary post-termination hearing, whereas in this case it is stipulated that the plaintiff has not received a hearing to date. *See* Paragraph 25 of the stipulations of fact. This is not necessarily fatal to the defendants, however, for it is the *opportunity* for some form of hearing which is mandated, and not necessarily the hearing it-

---

**3.** This was the conclusion reached by six members of the Supreme Court in *Arnett.*

self. *Board of Regents v. Roth*, 408 U.S. at 570 n. 8, 92 S.Ct. at 2705, 33 L.Ed.2d at 557. Where the plaintiff does not avail herself of the opportunities presented, it can hardly be said that there has been a constitutional deprivation of property rights. *See, e. g., Miller v. Williams*, 590 F.2d 317, 321 (9th Cir. 1979). The crucial question to be answered by this court, therefore, is whether the defendants presented the plaintiff with sufficient opportunities for a hearing, such that she was accorded those rights mandated by the requirements of procedural due process.

The record in this case, as evidenced through the stipulations of fact, indicates that there were essentially two steps in the appeal process which the plaintiff was to follow. First, she was to seek an appeal to the Director of the NMRC. Following that, she had the right to a full hearing before the Merit System Council. Plaintiff appeared before Mr. Hendrix, the NMRC Director, and was informed after that meeting that the next step was to appeal to the Council. After she did so, she was informed that she must first exhaust her local administrative remedies. Obviously, the plaintiff contends, such conflicting advice demonstrate the defendants' refusal to afford her a hearing.

The evidence indicates, however, that the defendants stood ready and willing to provide the plaintiff with a hearing. The letter from Mr. Hendrix to the plaintiff on September 7, 1978, is an excellent example of this willingness (Plaintiff's Ex. No. 5). Mr. Hendrix stated in that letter that all of the persons at the meeting were somewhat confused as to the nature of that meeting. If the plaintiff wanted a more formal setting at which she could present evidence, then he was willing to provide her with one. If however, the plaintiff wanted the original meeting to suffice, then she had only to say so. The plaintiff then received a letter from Mr. Childers of the Mississippi Classification Commission (Plaintiff's Ex. No. 2), stating that the Council could not consider an appeal unless the proper procedure was followed by the grievant at the local level.

Meanwhile, plaintiff committed a crucial mistake; instead of going back to Mr. Hendrix, clearing up the misunderstanding, and affording herself of the opportunity for a hearing, she filed this lawsuit. The opportunity was there and was not denied to her, yet she did not make use of it.

The court concludes that the procedures utilized in terminating the plaintiff complied with the minimum standards of procedural due process. Even if it might be found that the plaintiff's request for a full hearing was denied on August 31, that defect was cured one week later by the September 7 letter of Mr. Hendrix. After this the opportunity remained open, and the plaintiff cannot now complain about this subsequent action. *See Glenn v. Newman*, 614 F.2d at 472; *Blair v. Robstown Independent School District*, 556 F.2d 1331, 1334–35 (5th Cir. 1977). The opportunity for a hearing was given well within the 60-day appeal period mandated by the Council.

The Supreme Court has stated that the requirements of due process are flexible, and that the courts should consider three general factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). Considering these factors, and considering the minimum requirements imposed by *Thurston*, the court concludes that no more procedural safeguards could be imposed here that would protect the plaintiff from a potentially erroneous deprivation of her interest. The defendants have complied with those requirements necessary to protect the due process rights of their employees. To the extent that there exists a "state-created

avenue for review" that satisfies due process, the plaintiff has suffered no constitutional deprivation. *Crocker v. Hakes*, 616 F.2d 237, 239 (5th Cir. 1980). The court will enter an order dismissing the plaintiff's complaint, and directing the clerk to enter judgment for the defendants, with costs to be taxed against the plaintiff.