632 F.2d 57
 William KYLES, Appellant,
v.
EASTERN NEBRASKA HUMAN SERVICES AGENCY ("ENHSA"); R. D.
Christensen, Director of Human Services of ENHSA; Shelton
Duruisseau, ENHSA Supervisor; Governing Board of ENHSA,
including: Michael L. Albert; Ray Lind; LaVerne Marquart;
Floyd Triplett and Martin Zoz, Appellees.
 No. 80-1092.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 10, 1980.
Decided Oct. 8, 1980.
 
 Verne Moore, Jr., and Katherine A. Carey, on behalf of McGill, Koley, Parsonage & Lanphier, P. C., Omaha, Neb., for appellant.
 Bruce G. Mason of Ross & Mason, Omaha, Neb., for appellees Eastern Nebraska Human Services Agency (ENHSA).
 Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 William Kyles appeals from the decision of the United States District Court, District of Nebraska,[1] denying damages for improper dismissal sought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. We affirm.
 
 
 2
 Kyles claims that he was dismissed from his position with the Eastern Nebraska Human Services Agency (ENHSA) without being afforded a hearing and other protections to which he claims he is entitled. Also, Kyles claims he was deprived of a constitutionally protected liberty interest in his good name and reputation without due process. This allegation stems from certain reports on Kyles' behavior made by his supervisor and reviewed by special members of a citizens' advisory committee. Kyles claims that this review by the outside committee constituted an attack on Kyles' reputation in the community, damaging Kyles' good name and making it necessary for him to leave the area to obtain employment.
 
 
 3
 Kyles seeks damages arising from his termination consisting of lost wages, a hearing for him to clear his name, damages from the discontinuance of a PhD. program, and his costs and attorney's fees. He no longer seeks reinstatement.
 
 I. Facts[2]
 
 4
 The Douglas County (Nebraska) Department of Mental Health hired Kyles in July 1972, as coordinator of the educational center. Thereafter, Douglas County joined with Dodge, Washington, Sarpy, and Cass Counties to form the Eastern Nebraska Human Services Agency (ENHSA). ENHSA absorbed the entire staff of the Douglas County Department of Mental Health and it assumed the agency's functions.
 
 
 5
 Kyles received numerous excellent job evaluations during his initial years with ENHSA and its predecessor. In February 1977, he was promoted to Center Director of the Children and Adolescent Division, one of the three major divisions of ENHSA. Problems developed in May 1977, when Kyles' supervisor, Sheldon Duruisseau, Director of the Office of Mental Health, received complaints about Kyles' personal and professional conduct. Duruisseau received a complaint from the North Family Mental Health Clinic, a program under Kyles' direction, that Kyles was having an affair with the foster parent of a client. The child's therapist believed that the affair was hindering the child's treatment. A few days later, Duruisseau confronted Kyles with a reported allegation that he was having another affair with his administrative assistant. The supervisor told Kyles that such activity was a bad practice.
 
 
 6
 Soon after these events, the conflict between Kyles and a subordinate became so severe that Duruisseau had to intervene. Within a short time, Duruisseau discussed with Kyles reported allegations that Kyles had spoken with other ENHSA employees in an insubordinate and unprofessional fashion. Duruisseau claimed that these comments were having a "destructive" effect upon the organization.
 
 
 7
 In March 1978, Duruisseau was told by the chairman of the Governing Board to off-set a projected loss of funds by reducing the staff through attrition. Duruisseau informed Kyles of this policy. However, Kyles subsequently made two requests for staff replacements. Duruisseau received additional reports from Kyles' subordinates that Kyles was criticizing Duruisseau's attitude and policies. Kyles also questioned the propriety of Duruisseau's performance as director. In addition, on several occasions during March 1978, Kyles reportedly left his office during business hours without authorization.
 
 
 8
 Duruisseau processed the complaints regarding Kyles informally and placed reports concerning the allegations and meetings in Duruisseau's personal file, rather than Kyles' personnel file. Duruisseau counseled Kyles about the allegations and complaints, and stressed the need to develop a more cooperative attitude and to display professional conduct and judgment. Duruisseau testified that he would have dismissed Kyles sooner, if it had not been for their personal friendship.
 
 
 9
 By the end of March 1978, Duruisseau felt the strain on the agency had become intolerable and he decided to dismiss Kyles. On April 3, 1978, Duruisseau told Kyles that his employment was terminated. Several days later, Kyles received a Final Employee Appraisal Form, in which Duruisseau said Kyles had been dismissed because of his "poor" and "non-supportive" attitude and the problems created by his poor relationship with subordinates. Duruisseau concluded that, in light of Kyles' disruptive and unprofessional behavior, the best interests of the organization and the community necessitated Kyles' immediate dismissal.
 
 
 10
 At Kyles' request, R. D. Christensen, the Executive Director of ENHSA and Duruisseau's supervisor, reviewed the dismissal and concurred with Duruisseau's decision. Also, two members of the Eastern Nebraska Community Office of Mental Health Advisory Committee independently investigated Kyles' dismissal and Kyles' allegation of misconduct by ENHSA officials. The committee concluded that the dismissal was necessary and proper and it found no evidence of wrong doing by ENHSA officials.
 
 
 11
 Kyles brought suit in the United States District Court, District of Nebraska, claiming that he had a constitutionally protected property interest in his continued employment with ENHSA and that defendants had deprived him of that interest without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1982. Furthermore, he alleged that the discharge procedure unjustly tarnished his good name and reputation, which hampered his ability to obtain comparable employment.
 
 
 12
 The district court denied recovery on both claims. Judge Robinson held that the plaintiff Kyles had no property interest in his continued employment because of his status as a member of the management team. Also, Judge Robinson held that the memorandums regarding Kyles' conduct were neutral and non-accusatory. The documentation was found to be proper and the non-disclosure to be consonant with Duruisseau's "legitimate purposes."
 
 
 13
 The disclosure of the memorandums to the two designated members of the investigatory committee was found to be proper in light of the fact that they were factors in Duruisseau's decision and Duruisseau could expect "circumscription and confidentiality" from the committee.
 
 
 14
 Appellant Kyles argues that the district court erred in finding that the agency's Personnel Policy and Procedures Manual did not apply to the plaintiff. Kyles advances three reasons why the district court erred in finding that he did not have a property interest in his employment. These theories are that the manual had become an implied part of his employment contract, that the manual had become a procedure to which he was entitled through custom, and that his status as part of management did not bar his entitlement to the procedures required by the manual.
 
 
 15
 In addition, Kyles argues that the district court incorrectly denied his relief based on deprivation of his constitutionally protected liberty interest in his good name and reputation without being afforded due process. Kyles concludes that he had a property interest in his continued employment and a liberty interest in his good name, but that the dismissal procedure did not afford him procedural due process.
 
 II. Property Interests
 
 16
 It is well established that in order to establish procedural due process rights in a dismissal from employment, the claimant must establish a property interest in the position. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 596-603, 92 S.Ct. 2694, 2696-2700, 33 L.Ed.2d 570 (1972); Brouillette v. Board of Directors, 519 F.2d 126, 127-28 (8th Cir. 1975). Appellant Kyles was not tenured, nor did he prove at trial that any representations of tenure had been made to him. As the Supreme Court held in Roth, supra, 408 U.S. at 566, 577, 92 S.Ct. at 2709, in order to determine the meaning of an employment contract the court looks to state law. Kyles worked under no express contract term. Under Nebraska law, such a contract is terminable at will. Stewart v. North Side Produce Co., 197 Neb. 245, 248 N.W.2d 37, 38 (1976). Thus, in order for Kyles to recover, he must establish a property interest in some other manner or otherwise establish a claim to a hearing.
 
 
 17
 Kyles argues that the agency's Personnel Policy and Procedures Manual applied to him. This manual requires a suspension and probation period before an employee can be terminated from employment, unless the employee has committed certain violations.
 
 
 18
 Kyles asserts that the manual applies to all persons working for the agency, management and standard employee alike. The manual is not explicit on this point. The testimony of other supervisors in the agency consistently asserted that the manual did not apply to those in management because it used the term "employee." In light of Kyles' supervisory capacity of overseeing as many as ninety employees, Kyles was indeed a part of management. We therefore conclude that it was an accepted fact within ENHSA that the manual did not apply to him. The district court properly found that Kyles was a member of the management team and served at the will and pleasure of the Governing Board.
 
 
 19
 Kyles also argues that the custom and practice of the agency created a de facto tenure system and entitled him to the procedures provided in the manual. This attempt to establish a property interest in employment fails because the appellant has not established that there were "understandings promulgated and fostered by * * * officials" regarding tenure. Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2700. Perry v. Sindermann, supra, 408 U.S. at 600-03, 92 S.Ct. at 2699-2700. Furthermore, appellant has failed to establish that tenure or the manual had otherwise become an implied part of his employment contract. We therefore hold that the lower court did not err in finding that Kyles had no property interest in continued employment within the scope and protection of the Fourteenth Amendment.
 
 III. Liberty Interest
 
 20
 Kyles also argues that even though he may not have had a property interest in continued employment, his dismissal violated his procedural due process rights because it placed a stigma upon him without giving him a chance to reply to the accusations. This unjustly impaired his ability to obtain other employment. It is well established that there is a valid procedural due process claim if the claimant can show that his "good name, reputation, honor, or integrity" is at stake. Board of Regents v. Roth, supra, 408 U.S. at 573, 92 S.Ct. at 2707; Brouillette v. Board of Directors, supra, 519 F.2d at 127-28.
 
 
 21
 The stated reasons for Kyles' discharge were poor attitude, unsupportive actions towards his supervisors, disobeying agency directives, and poor relationships with others in the agency. We find that these reasons do not rise to the level of stigma contemplated in Roth or Brouillette.
 
 
 22
 The standard in Roth is not meant to give every dismissed employee a right to a hearing. Because the very involuntary departure from employment carries some stigma, the courts have sought to protect employees where employers leveled damaging accusations at the employee making it difficult or impossible for the employee to escape the stigma of those charges. Such a situation is not the case here.
 
 
 23
 The present case is analogous to that found in Bishop v. Wood, 426 U.S. 341, 348-49, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). In Bishop, a permanent police officer's employment was terminated and the reasons were communicated only to him. The Supreme Court found there was no property interest in continued employment nor was a liberty interest of the employee violated. The Court rejected any finding of a right to a hearing based on the falsity of the reasons for dismissal. The Court said, "(t)he truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired." Id. at 349, 96 S.Ct. at 2079. See also Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).
 
 
 24
 We find that the present case is similar to Bishop. The district court found that the reasons for termination were communicated only to Kyles and to two members of the advisory committee which held such information in confidence. The record supports this finding. Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).[3] Furthermore, the two individuals who investigated the propriety of the dismissal did so at Kyles' request.
 
 
 25
 The complaints of Kyles' immoral conduct that were received by Duruisseau from persons within ENHSA were kept in Duruisseau's personal file and furnished only to the two-man investigatory committee, composed of Father Gilg and Mr. Ault. The district court found that because these complaints were factors in Duruisseau's decision, it was appropriate for him to disclose them to the two investigators; Father Gilg, a Catholic priest, and Mr. Ault, an administrator at Creighton University. The court further found that Duruisseau could reasonably expect circumscription and confidentiality from these individuals and that this disclosure did not damage Kyles' good name and reputation. We are satisfied that this finding by the district court is not clearly erroneous.[4]
 
 
 26
 Kyles claims that by disclosing information to the committee, the agency foreclosed any chance of Kyles getting a similar job in the community. Kyles argues that even though the committee did not disclose the information publicly, the members were in positions that controlled the hiring of persons for all similar social service positions in the community.
 
 
 27
 We find it difficult to accept Kyles' allegation in light of the fact that he also talked to selected members of the advisory committee and that it faithfully pursued its mission of keeping the information confidential. We therefore reject the allegation that the investigation instituted by Kyles through this confidential citizens' committee constitutes the "stigma" that the Supreme Court contemplated in Roth. We conclude that the district court did not err in holding that Kyles had not established a violation of his liberty interest.
 
 
 28
 Affirmed.
 
 
 
 [1]
 The Honorable Richard E. Robinson, United States Senior District Judge for the District of Nebraska
 
 
 [2]
 This factual summary is based upon the excellent memorandum opinion of the district court. William Kyles v. Eastern Nebraska Human Services Agency, Civ.No. 78-0-378 (D.Neb. Dec. 26, 1979). The record amply supports the district court's findings
 
 
 [3]
 We distinguish this case from Owen v. City of Independence, 560 F.2d 925 (8th Cir. 1977), vacated and remanded on other grounds, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978). In Owen, a city employee was told of the reasons for discharge. However, a city councilman disclosed the reasons publicly. Unlike the present case, Owen involved public disclosure which placed a stigma on the employee justifying him to a hearing
 
 
 [4]
 The record disclosed that at the time of trial plaintiff had an excellent position in his chosen profession and did not seek reinstatement to his earlier employment. It was further conceded that no statements concerning his alleged immoral conduct were made available to inquiring employers by appellees or their representatives