**Norbert SERAFIN, Plaintiff,**

v.

**CITY OF LEXINGTON, NEBRASKA, et al., Defendants.**

**No. CIV. 81–L–222.**

United States District Court, D. Nebraska.

Aug. 17, 1982.

Steven D. Burns, Beverly Evans Grenier, Lincoln, Neb., for plaintiff.

Frank Piccolo, North Platte, Neb., for defendants.

## MEMORANDUM OPINION

SCHATZ, District Judge.

### INTRODUCTION

This civil rights action arose out of the termination of the plaintiff, Norbert Serafin (hereafter Serafin), from his employment as Superintendent of the Water and Sewer Department for the City of Lexington, Nebraska. Serafin alleges that he was deprived without due process of interests encompassed by the Fourteenth Amendment's protection of liberty and property, in violation of 42 U.S.C.A. §§ 1982, 1983, 1985 and 1988. The Court has jurisdiction of the parties and subject matter of this suit pursuant to 28 U.S.C.A. §§ 1331 and 1343. Trial was had to the Court, sitting without a jury, on May 10–13, 1982. This memorandum opinion will constitute the Court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a). Upon consideration of all the evidence adduced at trial, the Court concludes that Serafin's complaint must be dismissed on its merits, and that judgment should be entered for the defendants.

### FINDINGS OF FACT

1) Serafin and all of the individual defendants were residents of Dawson County,

Nebraska, throughout the time period relevant to this litigation.

2) The City of Lexington (hereafter City or Lexington) is a municipal corporation which is located in Dawson County, Nebraska, and which operates under the city manager form of government. Defendant, Leon Malzahn (hereafter defendant Malzahn), is the duly appointed city clerk and served as acting city manager from approximately May 13, 1981, until approximately September 28, 1981. Defendant, Willard Weinhold (hereafter defendant Weinhold), was the duly appointed city attorney at all times material hereto. Defendants, Richard Rogers, Clyde McCormick, Harold Kirkpatrick and Joseph Landholm were duly elected members of the city council at all times material hereto.

3) Serafin was first employed by the City on or about November 1, 1973, as a technician in the Engineering Department. In April of 1979, Jack Heaton, then Lexington city manager, appointed Serafin to be superintendent of the newly-created Water and Sewer Department. After successfully completing a six-month probationary period, Serafin continued in that position until his termination by the City.

4) In 1971, the city council adopted an employee manual (also referred to herein as personnel manual), the revised version of which became effective on October 1, 1979. All city employees, including department heads, are governed by the provisions of this revised personnel manual.

5) On June 29, 1981, Serafin received from defendant Malzahn a written notice of termination, dated June 26, 1981, notifying Serafin that he was being dismissed for cause from his position as Water and Sewer Department Superintendent effective June 29, 1981. At the time of this discharge, no formal pre-termination hearing procedures or post-termination appeal procedures were in place with respect to employees of the City. Also on or about June 29, 1981, Serafin retained an attorney to represent his (Serafin's) legal interests in connection with said dismissal from employment.

6) On July 10, 1981, by way of a letter directed to defendant Malzahn, Mayor Clyde McCormick and the city council, Serafin requested reinstatement to his former position as well as an award of back pay and damages.

7) At a regular meeting held on July 14, 1981, the city council adopted Resolution No. 1699, which established a procedure pursuant to which discharged city employees could appeal their dismissals from employment to a three-person Employee Appeal Board appointed by the city council. Although strict application of the time frame for appeal set forth in Resolution No. 1699 would have precluded its use by Serafin, defendant Weinhold advised Serafin that he would be allowed to request an appeal of his termination within ten (10) days of July 15, 1981. Also during the course of the July 14, 1981, meeting, the city council voted to reorganize the city's utilities services, dissolving the combined Water and Sewer Department and eliminating the position of Water and Sewer Department Superintendent.

8) On July 24, 1981, Serafin filed a written notice of appeal of his termination with the city council, said appeal being taken pursuant to the provisions of Resolution No. 1699.

9) Serafin filed this action in federal district court on July 27, 1981.

10) On July 30, 1981, defendant Malzahn signed and mailed a letter notifying Serafin that the City had reinstated his employment effective July 30, 1981. The reasons cited for reinstatement were that the City might not have followed proper procedures in terminating Serafin on or about June 26, 1981, and that the City did not wish to deprive Serafin of any applicable constitutional rights. This letter of reinstatement provided for the restoration to Serafin of accrued vacation time he had been using and the continuation of Serafin at his regular rate of pay on the city payroll. Prior to July 30, 1981, defendant Weinhold met with defendant Malzahn and recommended to Malzahn that Serafin be reinstated to employment, at least pending a hearing with respect to Serafin's termination.

11) Pursuant to a directive contained in the letter of reinstatement, Serafin reported to work for assignment of duties on the morning of August 3, 1981. Upon arrival at city offices, Serafin was met by defendant Malzahn and defendant Weinhold and was presented with a document entitled "Notice of Termination of Employment," advising Serafin that his employment as Water and Sewer Department Superintendent had been terminated effective August 3, 1981, and setting forth in detail the specific reasons for such termination. This notice was accompanied by another document, which stated in part:

PRE–TERMINATION HEARING

Although this Notice terminates your obligation to report for work, effective August 3, 1981, you have accrued vacation pay which will continue your status as a paid City employee until 8/25 11 AM, 1981. If you make written request with the office of the Lexington City Clerk on or before August 7, 1981, you will be provided a pre-termination hearing before the Lexington City Council, at the regular meeting to be held at 7:30 P.M. on August 11, 1981.

The document also described the procedures applicable to either a pre-termination hearing before the city council or an appeal hearing before the Employee Appeal Board.

12) In accordance with the termination notice, Serafin requested the opportunity to meet with the city council at the regular meeting set for August 11, 1981. On August 11, 1981, Serafin and his attorney met with the city council in closed session and a "pre-termination" hearing was scheduled for August 17, 1981, at 8:00 A.M. Serafin's attorney agreed to appear and represent Serafin at said hearing as scheduled by the city council.

13) Defendant Weinhold on behalf of the City sent notice of the scheduled termination hearing to Serafin's legal counsel on August 12, 1981. On that same date, Serafin delivered a written notice of intention to appeal his discharge pursuant to Resolution No. 1699.

14) On August 17, 1981, a protracted hearing dealing solely with the matter of Serafin's termination from city employment was held before the city council, sitting in executive session. Four of the five members of the city council, namely defendants McCormick, Rogers, Kirkpatrick and Landholm, were present at such hearing. Both Serafin and the City were represented by counsel. Defendant Weinhold served as presiding hearing officer at the request of the city council. A registered court reporter took down and transcribed the proceedings in their entirety. During the course of this termination hearing, a total of eleven witnesses, including defendant Malzahn, appeared and gave testimony. All of the witnesses called by the City, with the exception of one witness whose testimony appeared to be of peripheral importance, were fully cross-examined by Serafin's attorney. Serafin was permitted to present evidence, including the introduction of exhibits, and was given the opportunity to make a closing argument. From time to time, defendant Weinhold was called upon as hearing officer to rule on evidentiary matters. Following the conclusion of testimony, the city council retired for private deliberations, at which defendant Weinhold was present. Subsequently, in open session attended by Serafin, the city council adopted Resolution No. 1701, providing that the city council had determined that good cause did exist for the termination of Serafin's employment

... in that Norbert Serafin has been inefficient and ineffective in the performance of his duties, has been unable to promote cooperation between employees and departments of the City, has been unable to get along with his fellow employees, which inability has caused an excessive turnover in city employees and has engaged in other conduct which is not in the best interests of good public service.

The city council resolved, therefore, that defendant Malzahn as acting city manager was authorized to terminate the employment of Serafin, provided that such termination would not be deemed effective until Serafin was formally notified by certified

mail of the termination, and further provided that Serafin's status as a paid city employee would continue after the effective date of termination until such time as his accrued vacation benefits had been exhausted, which benefits would be deemed to commence on the effective date of discharge.

15) On August 17, 1981, copies of Resolution No. 1701 were sent to Serafin and his attorney by certified mail. According to the returned receipts, the addressees received said copies on August 18, 1981.

16) At no time material hereto did defendant Weinhold formally disclose to Serafin that he (Weinhold) had (1) conferred with defendant Malzahn and others regarding the city's legal position with respect to the subject matter of the termination hearing, or (2) drafted or assisted in the preparation of certain documents, including the August 3, 1981, notice of termination, which were connected with Serafin's dismissal from city employment.

17) Neither at the termination hearing held August 17, 1981, nor prior thereto did Serafin's attorney formally object to (1) defendant Weinhold's serving as hearing officer, (2) the relatively informal procedures and relaxed rules of evidence employed at said hearing, or (3) the fact that defendant Weinhold was present during the city council's private deliberations following the conclusion of the evidence.

18) On or about June 30, 1981, in response to requests for an interview from reporters for two newspapers in general circulation in the Lexington area, defendant Malzahn answered certain questions relating to the fact of, and the reasons for, Serafin's termination from his position as Water and Sewer Department Superintendent.

19) The termination hearing held before the city council on August 17, 1981, is the hearing to which the procedural requirements of constitutional due process attach.

20) At the time of his discharge, Serafin was earning a salary of $1,476 per month, plus applicable fringe benefits. The City paid Serafin's wages through August 18, 1981. Thereafter, Serafin received pay-

ments from the City through September 16, 1981, to compensate him for 113 hours of accrued vacation.

21) Since his termination as Water and Sewer Department Superintendent, Serafin has made reasonable efforts to mitigate his damages, if any, by attempting to secure other comparable employment.

22) On August 24, 1981, a hearing was held before United States District Judge Warren K. Urbom to consider Serafin's motions for a temporary restraining order or preliminary injunction enjoining the City from terminating Serafin's employment. These motions for injunctive relief were denied by a memorandum and order dated September 23, 1981.

CONCLUSIONS OF LAW

I. Property Interest

■ The first question to be resolved is whether Serafin possessed a legitimate claim of entitlement to the benefit of public employment which was protected by the due process clause of the Fourteenth Amendment. It is by now a well-established principle that a public employee who has some legally cognizable property interest in continued employment is guaranteed a certain amount of procedural protection by the United States Constitution before being permanently deprived of that interest. *E.g., Bishop v. Wood,* 426 U.S. 341, 343–44, 96 S.Ct. 2074, 2076–2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 569, 577, 92 S.Ct. 2701, 2705, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2698–2699, 33 L.Ed.2d 570 (1972); *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 777 (9th Cir. 1982); *Bunting v. City of Columbia,* 639 F.2d 1090, 1093 (4th Cir. 1981); *Kyles v. ENHSA,* 632 F.2d 57, 60 (8th Cir. 1980); *Thurston v. Dekle,* 531 F.2d 1264, 1271–72 (5th Cir. 1976), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 114 (1978); *Rose v. ENHSA,* 510 F.Supp. 1343, 1355–56 (D.Neb.1981); *Roach v. Plainview School District No. 5,* 499 F.Supp. 702, 705 (D.Neb.1978); *Pinson v. Hendrix,* 493 F.Supp. 772, 777 (N.D.Miss.

1980), *aff'd,* 660 F.2d 495 (5th Cir. 1981). This property interest in employment sufficient to trigger the application of procedural due process guarantees must be found by reference to state law. *Bishop v. Wood, supra,* 426 U.S. at 344, 96 S.Ct. at 2077; *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *Williams v. Day,* 553 F.2d 1160, 1163 (8th Cir. 1977).

■ Under the law of Nebraska, an employee is generally terminable at will in the absence of an employment contract for a fixed term. *Kyles v. ENHSA, supra; Rose v. ENHSA, supra,* 510 F.Supp. at 1356; *Alford v. Life Savers, Inc.,* 210 Neb. 441, 442, 315 N.W.2d 260, 261 (1982). The Nebraska Supreme Court has recognized, however, that persons may have constitutionally protected property rights in continued public employment stemming from such sources as municipal ordinances, implied contracts and the regulations of administrative agencies. *See Nevels v. State,* 205 Neb. 642, 645, 289 N.W.2d 511, 513 (1980).

■ In the present case, Serafin's rights and expectations with regard to his employment were set out in the City of Lexington's personnel manual. Under this manual, new employees of the City are required to satisfactorily complete a three-month probationary period prior to obtaining a "permanent appointment" or "permanent status." Permanent status is described at page 4 of the manual as follows:

> An employee with a permanent status can look forward to a career with the City Government with a feeling of security, providing you do your work in a satisfactory manner.
>
> . . . .
>
> Of course, lay-offs because of budget limitations are possible but not probable. If job security is important to you, your City Government has much to offer.

In a section entitled Disciplinary Action, the employee manual lists fourteen reasons for which any city employee may be removed, demoted, suspended, transferred to another position or reprimanded. These reasons include incompetence or inefficiency, conduct unbecoming an employee of the City while on duty, inability to get along with fellow employees, inexcusable absence without being granted leave, and "any other activity which is not in the best interests of ... good public service." Personnel manual at 21.

The above standards and specifications create a justified mutual expectation that, once begun, permanent employment with the City will continue unless sufficient cause for discharge is given. *See Burgess v. Miller,* 492 F.Supp. 1284, 1289 (N.D.Fla. 1980). Moreover, the listed causes for dismissal or other disciplinary action do not seem so nebulous as to permit the termination of a non-probationary employee at the City's will and pleasure. *See Skomorucha v. Wilmington Housing Authority,* 504 F.Supp. 831, 835 (D.Del.1980); *cf. Rose v. ENHSA, supra,* 510 F.Supp. at 1356 (probationary employee held his position at the will and pleasure of his employer under applicable personnel policies).

"City employment which allows termination only for cause creates a constitutionally protectable property interest." *Thurston v. Dekle, supra,* 531 F.2d at 1272. When considered in its entirety, the personnel manual in question gives permanent city employees a legitimate claim of entitlement to, rather than a mere subjective expectancy of, continued employment. *See Nelson v. Mustian,* 502 F.Supp. 698, 706 (N.D.Fla.1980); *Young v. Peoria Housing Authority,* 479 F.Supp. 1093, 1095 (C.D.Ill.1979). The Court concludes, therefore, that Serafin had a property interest in employment which entitled him to a hearing comporting with the minimal requirements of procedural due process. *See Skomorucha v. Wilmington Housing Authority, supra; Nelson v. Mustian, supra; Pinson v. Hendrix, supra; Burgess v. Miller, supra,* 492 F.Supp. at 1288–89; *Young v. Peoria Housing Authority, supra. But see Sumler v. City of Winston-Salem,* 448 F.Supp. 519, 530 (M.D.N.C.1978) (presence of a discharge "for cause" provision did not by itself create a property interest).

**1124**

## II. Liberty Interest

As an additional ground for relief herein, Serafin contends that he was deprived of a constitutionally protected interest in "liberty" without due process of law. This claim is totally without merit.

 It is well settled that liberty interests are implicated when a public employer makes charges against an employee which (1) might seriously damage the employee's standing and associations in his community, or (2) impose on the employee a stigma or other disability that significantly forecloses his freedom to take advantage of other employment opportunities. *See, e.g., Board of Regents v. Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707; *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1100–01 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *Kyles v. ENHSA, supra,* 632 F.2d at 61; *Nathanson v. United States,* 630 F.2d 1260, 1264 (8th Cir. 1980); *Harris v. Arizona Board of Regents,* 528 F.Supp. 987, 998 (D.Ariz.1981); *Rose v. ENHSA, supra,* 510 F.Supp. at 1358; *Roach v. Plainview School District No. 5, supra,* 499 F.Supp. at 706. The procedural protections of due process apply if: (1) the substantial accuracy of the charge is contested, *Codd v. Velger,* 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–884, 51 L.Ed.2d 92 (1976); (2) the stigmatizing reasons for the termination are publicly disclosed, *Bishop v. Wood, supra,* 426 U.S. at 348, 96 S.Ct. at 2079; and (3) the claimed damage to reputation occurs during the course of the termination of employment, *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). With reference to the need for a due process hearing because of the violation of a liberty interest, the United States Supreme Court has stated: "Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required." *Codd v. Velger, supra,* 429 U.S. at 628, 97 S.Ct. at 884.

 In the present case, the basis for Serafin's liberty interest claim appears to be that his termination was accompanied by the comments of acting city manager Mal-zahn, which appeared in two Lexington-area newspapers, and that these comments placed such a stigma on Serafin as to require that he be given an opportunity to clear his name at a hearing. However, although there was some publicity surrounding the dismissal of Serafin from his position as Water and Sewer Department Superintendent, the only reasons for Serafin's discharge which were made public were his inability to promote interdepartmental cooperation and an excessively high employee turnover rate within Serafin's department. There is simply no evidence in the record which would indicate that Serafin was publicly charged with dishonesty, immorality, racism, drug usage or grave character defects. *See Nathanson v. United States, supra,* 630 F.2d at 1265; *Roach v. Plainview School District No. 5, supra,* 499 F.Supp. at 706–07.

"It is clear that allegations of poor performance or an inability to get along [with co-workers] are insufficient to implicate a liberty interest." *Harris v. Arizona Board of Regents, supra,* 528 F.Supp. at 998, *citing Bollow v. Federal Reserve Bank, supra,* 650 F.2d at 1101. The relatively minor accusations of inadequacy leveled against Serafin cannot fairly be viewed as disclosures of such stigmatizing effect as to seriously damage Serafin's community standing or significantly foreclose his future employment opportunities. *See Bunting v. City of Columbia, supra,* 639 F.2d at 1094; *Kyles v. ENHSA, supra,* 632 F.2d at 61–62; *Harris v. Arizona Board of Regents, supra; Rose v. ENHSA, supra.* Even assuming that a record of non-retention in one job might make an employee somewhat less attractive to other employers, it would stretch the concept too far to suggest that a person has been deprived of liberty merely because he has been discharged. *See Board of Regents v. Roth, supra,* 408 U.S. at 574 n.13, 575, 92 S.Ct. at 2707 n.13, 2708. The Court finds, therefore, that the defendants' actions did not deprive Serafin of any interest in liberty within the scope and protection of the Fourteenth Amendment.

### III. Due Process

The final question for decision is whether the hearing provided by the City on August 17, 1981, adequately protected Serafin's property interest in continued employment. Resolution of this issue requires a brief preliminary explanation of the frequently discussed but often vaguely defined term "due process."

Due process of law is a flexible concept with its requirements depending upon appropriate accommodation of the competing interests involved. *Navato v. Sletten*, 560 F.2d 340, 345 (8th Cir. 1977); *see, e.g., Smith v. Organization of Foster Families*, 431 U.S. 816, 848, 97 S.Ct. 2094, 2111, 53 L.Ed.2d 14 (1977); *Goss v. Lopez*, 419 U.S. 565, 578–79, 95 S.Ct. 729, 738–739, 42 L.Ed.2d 725 (1975); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981), *quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Past decisions of the United States Supreme Court mandate that some form of hearing is required at some time before an individual is finally deprived of a constitutionally protectable property interest. *See, e.g., Parratt v. Taylor, supra; Goss v. Lopez, supra*, 419 U.S. at 579, 95 S.Ct. at 738; *Mathews v. Eldridge, supra; Board of Regents v. Roth, supra*, 408 U.S. at 569–70, 92 S.Ct. at 2705. The formality and procedural requisites for such hearings must necessarily vary, depending on the importance of the interests involved, the particular characteristics of the controversy, and the nature of any subsequent proceedings. *See Board of Regents v. Roth, supra*, 408 U.S. at 570 n.8, 92 S.Ct. at 2705 n.8; *Glenn v. Newman*, 614 F.2d 467, 472

(5th Cir. 1980); *Pinson v. Hendrix, supra*, 493 F.Supp. at 777. However, each of these procedures must still meet minimum due process requirements, which in a given case may include:

1) adequate written notice of the specific grounds for termination, *Goldberg v. Kelly*, 397 U.S. 254, 267–68 [90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287] (1970); *Glenn v. Newman, supra;*

2) disclosure of the evidence supporting termination, *Morrissey v. Brewer, supra*, 408 U.S. at 489, [92 S.Ct. at 2604]; *Chung v. Park*, 514 F.2d 382, 386 (3d Cir. 1975), *cert. denied*, 423 U.S. 948 [96 S.Ct. 364, 46 L.Ed.2d 282] (1975);

3) the right to confront and cross-examine available adverse witnesses, *Goldberg v. Kelly, supra*, 397 U.S. at 269–70, [90 S.Ct. at 1021–1022]; *Nevels v. Hanlon*, 656 F.2d 372, 376 (8th Cir. 1981);

4) an opportunity to be heard in person and to present witnesses and documentary evidence, *Morrissey v. Brewer, supra; Chung v. Park, supra;*

5) the opportunity to be represented by counsel, *Goldberg v. Kelly, supra*, 397 U.S. at 270, [90 S.Ct. at 1021]; *see Vanelli v. Reynolds School District No. 7, supra*, 667 F.2d at 780;

6) a fair-minded and impartial decisionmaker, *Withrow v. Larkin*, 421 U.S. 35, 46–47 [95 S.Ct. 1456, 1463–1464, 43 L.Ed.2d 712] (1975); *Klinge v. Lutheran Charities Ass'n*, 523 F.2d 56, 60, 63 (8th Cir. 1975);

7) a written statement by the factfinders as to the evidence relied upon and the reasons for the determination made, *Morrissey v. Brewer, supra; Chung v. Park, supra.*

In the present case, irrespective of whether the hearing held on August 17, 1981, is labeled a pre-termination hearing or a post-termination proceeding,[1] the critical inquiry is whether the procedure afforded

---

1. A pre-termination hearing is not a hearing held prior to any decision to terminate, as Serafin suggests, but rather a hearing which takes place prior to the final deprivation of benefits. *Chung v. Park, supra*, 514 F.2d at 386 n.7; *see Parratt v. Taylor, supra*, 451 U.S. at 540–41, 101 S.Ct. at 1915–1916.

Serafin met the standards of fundamental fairness required by the due process clause. On June 29, 1981, and August 3, 1981, Serafin received written notices of termination which advised him in sufficient detail of the reasons for his discharge. *See Glenn v. Newman, supra,* 614 F.2d at 472–73. At the termination hearing before the city council, Serafin: was represented by an attorney who confronted and cross-examined adverse witnesses on Serafin's behalf; was allowed to present any oral testimony or documentary evidence he wished; and was given ample opportunity to challenge evidence presented by the City. After listening to both sides of the case, the city council, by way of the adoption in open session of Resolution No. 1701, concurred in defendant Malzahn's earlier decision that just and sufficient cause existed for the termination of Serafin's employment.

Serafin nevertheless contends that the hearing and attendant safeguards provided on August 17, 1981, failed to accord him due process of law. First, Serafin argues that he was denied the right to have the matter of his termination evaluated by a fair and impartial decisionmaker, whether that "decisionmaker" is found to be defendant Malzahn, acting as city manager, or defendant Weinhold, acting as hearing examiner while being employed as city attorney. The Court does not agree with this contention.

■ With regard to defendant Malzahn, Serafin asserts that the fact Malzahn testified as an adverse witness at the August 17, 1981, hearing somehow rendered it impossible for Malzahn to act as a neutral decisionmaker in ascertaining whether Serafin's employment should be terminated for cause. It should initially be noted that Malzahn, as interim city manager, clearly had the statutory power and duty to remove all employees, including department heads, who demonstrated their unfitness for city employment. Section 19–646, Reissue Revised Statutes of Nebraska, 1943. In his administrative capacity, Malzahn could rightfully institute an investigation, collect and assess the facts, and then make the necessary adjudications. *See Withrow v.*

*Larkin, supra,* 421 U.S. at 53, 58, 95 S.Ct. at 1467, 1470. "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker." *Hortonville Joint School District No. 1 v. Hortonville Education Ass'n,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976). The fact that Malzahn happened to testify at a subsequent hearing before an independent body about the circumstances surrounding his decision to terminate a city employee in no way rendered Malzahn an unfair decisionmaker lacking objectivity. *Cf. Warren v. National Ass'n of Secondary School Principals,* 375 F.Supp. 1043, 1047 (N.D.Tex. 1974) (student was denied due process where defendant teacher acted as accusing witness and, as member of faculty council, sat as judge in student's dismissal hearings).

With respect to defendant Weinhold, Serafin's position is that Weinhold's employment as city attorney, close consultation with defendant Malzahn, and active participation in the development of the City's case against Serafin presented a direct conflict of interest and caused Weinhold to be impermissibly biased at the termination hearing held on August 17, 1981. At trial, Weinhold testified that he considered his primary responsibilities as hearing officer to be ruling on evidentiary matters and facilitating the smooth flow of the hearing. The Court finds it significant that Weinhold did not act as an advocate or function as an adjudicator with final decisionmaking power at Serafin's termination hearing. "It is clear that the presiding officer acted in the capacity of a parliamentarian for the purpose of seeing that the sessions of the panel were conducted in an orderly manner, and there is nothing to indicate that plaintiff was prejudiced in any way by the attorney's participation in the proceedings in the manner and to the extent just mentioned." *Klinge v. Lutheran Charities Ass'n, supra,* 523 F.2d at 62–63.

Serafin has failed to show that the decision to terminate his employment was infected by an intolerably high risk of unfair-

ness. Some evidence that defendant Malzahn and defendant Weinhold were "involved" in the events preceding this decision, without more, is not enough to overcome the presumption of honesty and integrity applicable to the person or persons serving as decisionmaker in Serafin's case. *See Hortonville Joint School District No. 1 v. Hortonville Education Ass'n, supra,* 426 U.S. at 496–97, 96 S.Ct. at 2315–2316; *Withrow v. Larkin, supra,* 421 U.S. at 47, 95 S.Ct. at 1464; *Vanelli v. Reynolds School District No. 7, supra,* 667 F.2d at 779 n.10.

> The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances."

> *Withrow v. Larkin, supra,* 421 U.S. at 55, 95 S.Ct. at 1468, *quoting United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941).

Additionally, this Court is not convinced that defendants Malzahn or Weinhold possessed the kind of financial stake in the action sufficient to create a conflict of interest, and there is nothing in the record to suggest that Malzahn, Weinhold or the city councilmen who composed the hearing body had any personal animosity or ill will toward Serafin. *See Hortonville Joint School Dist. No. 1 v. Hortonville Education Ass'n, supra,* 426 U.S. at 491–92, 96 S.Ct. at 2313–2314; *Vanelli v. Reynolds School District No. 7, supra,* 667 F.2d at 779 n.10, 780; *Klinge v. Lutheran Charities Ass'n, supra,* 523 F.2d at 63. The Court, therefore, rejects Serafin's claim that the decisionmaker and hearing officer were constitutionally incapable of rendering an objective evaluation or judgment in the matter of his termination. *See Nevels v. Hanlon, supra,* 656 F.2d at 377.

Finally, Serafin contends that the alleged reliance by Malzahn and the city council on evidence purportedly not made part of the August 17 hearing record deprived Serafin of a meaningful opportunity to confront all the evidence adduced against him and to cross-examine all adverse witnesses. This argument is similarly without merit.

The evidence to which Serafin apparently refers includes one or more of the following: (1) an allegation that several tools owned by the City might have been missing from Serafin's assigned vehicle shortly after his dismissal on June 29, 1981; (2) a written statement to the effect that Serafin had been seen driving his city vehicle around a Lexington-area lake on a weekend; (3) certain citizen complaints relating to alleged water and sewer service problems; and (4) a request allegedly made by a representative of the League of Nebraska Municipalities that Serafin not be invited to future League meetings because of his abrasive personality. Even conceding that Serafin was given no opportunity to effectively rebut the above charges, a proposition which is certainly not clear from a careful reading of the record, the Court finds that this circumstance "in no way affected the outcome of the [city council's] decision or prejudiced [plaintiff]." *Vanelli v. Reynolds School District No. 7, supra,* 667 F.2d at 780 n.13; *see Codd v. Velger, supra,* 429 U.S. at 628–29, 97 S.Ct. at 884–885; *Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2079–2080. Testimony elicited at trial indicates that neither Malzahn nor the city councilmen serving as the hearing panel accorded much, if any, weight to the "evidence" to which Serafin now objects. When viewed in light of the considerable evidence supporting the asserted reasons for Serafin's discharge, namely, an excessively high employee turnover rate and inability to promote interdepartmental cooperation, it becomes readily apparent that the statements complained of did not "injuriously affect the substantive rights of the complaining party." *Eastburn v. Ford Motor Co.,* 471 F.2d 21, 23 (5th Cir. 1972); *cf. Nevels v. Hanlon, supra,* 656 F.2d at 375, 376 (former state employee was denied due process where Labor Commissioner, in deciding to finalize employee's termination in

**1128**

spite of Appeal Board's recommendation of reinstatement, relied upon ex parte communications concerning testimony directly related to stated reasons for employee's dismissal). Serafin is, therefore, entitled to no relief on the ground that he was deprived of his right to respond to all adverse evidence and to cross-examine witnesses.

CONCLUSION

It should be recalled that only the minimum requirements of due process are guaranteed by the Constitution. Those minimum requirements are any reasonable procedures appropriate to the particular situation which fairly protect an individual from arbitrary action. *Burgess v. Miller, supra,* 492 F.Supp. at 1290; *see Smith v. Organization of Foster Families, supra,* 431 U.S. at 848, 97 S.Ct. at 2111. If the procedure employed by the defendants herein was adequate to prevent unreasonable or capricious termination decisions, it satisfies due process. *Chung v. Park, supra,* 514 F.2d at 387. Defendant Weinhold testified at trial as follows:

> ... we wanted to accommodate Mr. Serafin if he desired a hearing, we wanted to provide a hearing for him. If there was a possibility that we had done something wrong, we wanted to correct that, and I think this was the path we chose to follow, that we would try to go as far as possible in Mr. Serafin's direction in providing any procedural type of protection he wanted.

The Court concludes that the path chosen was followed, and that the City provided Serafin with sufficient procedural protections before finally terminating his employment. Plaintiff was afforded and received a fair, although not perfect, hearing. He received all the process to which he was entitled and which the law requires. He can expect no more. He has simply not proven his claim.

Accordingly, a separate order dismissing Serafin's complaint on the merits, and directing that judgment be entered for the defendants, will be entered contemporaneously with this memorandum opinion.