742 F.2d 477
 117 L.R.R.M. (BNA) 2182, 102 Lab.Cas. P 11,428
 Andrew J. TAUTFEST, Appellant,
v.
CITY OF LINCOLN, NEBRASKA; Lincoln Electric System; Walter
A. Canney, in his capacity as an Administrator for Lincoln
Electric System; Leo DeMars; Joyce Durand; Bev Grenier;
T.O. Haas; Richard Lombardi; Jim Mallon; Carroll Moore;
Jim Pett and Harold Robertson, in his/her capacity as
members of the Board of Directors of Lincoln Electric
System; Helen Roosalis, in her capacity as the Mayor of the
City of Lincoln; Donna Frohardt; Michael Steinman;
Margrethe Ahlschwede; Bill Danley; Joseph Hampton; Louis
Shackelford and Eric Youngberg, in his/her capacity as
members of the City Council, City of Lincoln, Nebraska, Appellees.
 No. 83-2036.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 10, 1984.
Decided Aug. 31, 1984.
 
 Leroy P. Shuster, Lincoln, Neb., for appellant.
 Mary C. Wickenkamp, Lincoln, Neb., for appellee.
 Before ROSS, FAGG and McMILLIAN, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 Andrew J. Tautfest brought this action under the Civil Rights Act, 42 U.S.C. Sec. 1983, and the Labor Management Relations Act, 29 U.S.C. Sec. 141 et seq., when he was terminated from employment without a hearing by Lincoln Electric System (LES), a municipal agency of Lincoln, Nebraska. At the time of termination, Tautfest was on disciplinary probation. Tautfest alleged denial of procedural due process under the fourteenth amendment and breach of the collective bargaining agreement between LES and Tautfest's union. The district court[1] denied Tautfest's request for relief, holding that due process did not attach to Tautfest's probationary status and that termination did not breach the collective bargaining agreement. Tautfest v. City of Lincoln, No. CV82-L-134 (D.Neb. July 21, 1983). Tautfest appeals from that decision, pursuant to 28 U.S.C. Sec. 1291. We find the district court's opinion to be well reasoned, and accordingly affirm.
 
 I. BACKGROUND
 
 2
 The facts are undisputed. Tautfest was first employed by LES from 1972 to April 15, 1981, at which time he was terminated for using agency property as collateral. The specifics of that termination are irrelevant here. He was later reinstated in a different position subject to a one-year probationary period, pursuant to a letter from LES Administrator Walter A. Canney, dated September 2, 1981. That letter to Tautfest specifically stated:
 
 
 3
 You will be on probation for the first year, and any performance or disciplinary problems will result in immediate termination.
 
 
 4
 On February 16, 1982, during his probationary period, Tautfest was driving an LES truck which pulls a grinding unit for chopping tree limbs. On his way to the work site that morning the beacon on the top of the truck scraped an overhead sign at a gas station, causing damage to the sign. Aware of this scraping, but unaware of the damage caused to the sign, Tautfest left the station. Upon arrival at the work site, Tautfest failed to immediately report the accident to his foreman as required by LES safety rules.
 
 
 5
 At approximately 4:15 that afternoon Tautfest was called in to a meeting of four LES officials and was informed of his immediate termination for violation of LES work rules, specifically, LES safety rules and leaving the scene of an accident while operating a LES vehicle. Soon thereafter, Tautfest filed a grievance with LES. LES responded by letter, dated February 22, 1982, stating that Tautfest's termination was not grievable because of his probationary status. Tautfest subsequently brought suit claiming he was denied procedural due process, and that LES had breached the LES-IBEW contract.
 
 
 6
 Tautfest essentially argues that he retained his "permanent employee" status during his disciplinary probation period, and thus had a protected expectation of continued employment at LES, by virtue of the following:
 
 
 7
 a) The LES Personnel Policies Manual, incorporated into the LES-IBEW collective bargaining agreement, which:
 
 
 8
 1) defines "probationary employees" as full-time or part-time employees "who have not completed their initial probationary period," i.e., the working test period which begins with the original date of employment during which employees are expected to demonstrate their capabilities * * * (definitions);
 
 
 9
 2) provides that "an employee in the Initial Probationary Period may be discharged * * * at any time with or without cause and such action shall not be subject to the grievance procedure" (Rule 167);
 
 
 10
 3) provides that "LES reserves the right to discharge or suspend any employee at any time without advance notice, for just cause" (Rule 170); and
 
 
 11
 4) provides that "Such matters reserved to L.E.S. and all matters contained in [110-Management Rights] (except [the right to discipline and discharge employees for just cause] shall not be subject to grievance proceedings * * *." (Rule 110) (emphasis added);
 
 
 12
 b) A letter from LES, dated September 2, 1981, reinstating Tautfest in the LES work force, though in a different position, so long as there were no "performance or disciplinary problems," and expressing LES's expectations that Tautfest would continue his satisfactory performance and would "be a valuable and long-term employee at LES";
 
 
 13
 c) A memo from LES, dated September 8, 1981, substantially reinstating Tautfest's seniority status and fully restoring his accrued sick leave from his previous employment with LES.
 
 
 14
 The district court held that nothing in the facts of the case gave Tautfest a reasonable expectation of continued employment during his period of disciplinary probation or thereafter.[2] The court reasoned that when Tautfest returned to work agreeing to the terms of the September 2, 1981 letter and September 8, 1981 memo they became part of his employment contract, giving no assurance of continued employment and no limitation of causes for discharge. The court specifically noted that the September 2 letter, which stated "any performance or disciplinary problem will result in immediate termination," was a warning that Tautfest would be "walking on eggshells" for a year. The court concluded that no rights were created to which due process could attach. The court further concluded that, for the same reasons, there was no breach of the collective bargaining contract between LES and Tautfest's union.
 
 II. PROCEDURAL DUE PROCESS CLAIM
 
 15
 We agree with the holding of the district court that Tautfest did not have a protectable property interest in his job while on disciplinary probation.
 
 
 16
 The proper standard of determining whether a public employee has a protected property interest in his public employment is well established. A discharged employee may assert procedural due process rights under the fourteenth amendment of the federal Constitution if he or she establishes that a property interest in the state position existed. A property interest does not exist unless the employee has a "legitimate claim of entitlement" to the public job. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Brockell v. Norton, 688 F.2d 588, 590 (8th Cir.1982). The court must look to the contract of employment and to state law to determine if there are any rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Brockell v. Norton, supra, 688 F.2d at 590. Alternatively, a plaintiff may establish a property interest by showing mutually explicit understandings or common practices and agreements derived from the employer-employee relationship which would create a sufficient expectancy of continued employment to merit some due process. Perry v. Sindermann, 408 U.S. 593, 600-603, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972); Kyles v. Eastern Nebraska Human Services Agency, 632 F.2d 57, 60-61 (8th Cir.1980).
 
 
 17
 It is also established under Nebraska law that, in the absence of an employment contract for a fixed term, an employee is terminable at will. Kyles v. Eastern Nebraska Human Services Agency, supra, 632 F.2d at 60; Stewart v. North Side Produce Co., 197 Neb. 245, 248 N.W.2d 37, 38 (1976).
 
 
 18
 In other cases involving public employees who were discharged while on probation, courts have recognized that probationary employees do not have the same interest in continued employment as nonprobationary employees, and generally are not entitled to due process upon discharge, unless expressly provided for in the employment contract or controlling regulations. Beeson v. Hudson, 630 F.2d 622, 626 (8th Cir.1980); Sherman v. Yakahi, 549 F.2d 1287, 1291 (9th Cir.1977); Dixon v. City of Wilmington, 514 F.Supp. 250, 253-54 (D.Del.1981); Rose v. Eastern Nebraska Human Services Agency, 510 F.Supp. 1343, 1356-57 (D.Neb.1981).
 
 
 19
 In the present case, Tautfest can establish no property interest stemming from state law. It is also clear that as a probationary employee Tautfest worked under no express contract for a fixed term, and therefore, was terminable at will under Nebraska law. Rose v. Eastern Nebraska Human Services Agency, supra, 510 F.Supp. at 1356.
 
 
 20
 Lastly, it does not appear from the record that Tautfest presented evidence showing "mutually explicit understandings or common practices and agreements derived from the employer-employee relationship which would create a sufficient expectancy of continued employment to merit some due process." Brockell v. Norton, supra, 688 F.2d at 591.
 
 
 21
 Tautfest argues that the LES policy manual ("Working With LES") supports his claim of a property interest in continued employment. He specifically argues that the LES manual denies the right to grievance procedures only to "initial probationary employees" and reasons that since he does not fall into that category, as was acknowledged by the district court, he is entitled to exercise the general LES rule of right to grievance upon discharge (Rules 110, 124 and 167).
 
 
 22
 It is true that the LES manual establishes a general right to grievance for its employees, expressly excluding initial probationary employees. It is also true, however, that the manual is silent as to the rights and benefits, if any, afforded to employees on disciplinary probation. It is the opinion of the court that Tautfest stretches the point in claiming that the LES manual, by its silence, gives disciplinary probationary employees the same rights and expectation to continued employment as full-time nonprobationary employees of LES.
 
 
 23
 Tautfest cannot ignore the fact that he accepted reinstatement to the LES workforce under the terms of the September 2, 1981 letter, which warned of immediate termination for performance or disciplinary problems. We agree with the district court's conclusion that this letter and the September 8, 1981 memo became part of Tautfest's employment contract, giving him no expectation of continued employment or protected property interest in his job at LES.
 
 III. BREACH OF COLLECTIVE BARGAINING CLAIM
 
 24
 Utilizing essentially the same argument as above, Tautfest claims that, under a contract theory, he was entitled to a grievance hearing. He argues that the collective bargaining agreement between LES and IBEW which incorporates the LES policy manual, guarantees to all employees, except initial probationary employees, the right to grievance upon termination. Tautfest reasons that since he was not an initial probationary employee at the time of termination, then he was entitled to grievance proceedings, and that LES's refusal to give him such a hearing breached the LES-IBEW contract. Tautfest also argues that the reinstatement letter of September 2, 1981, stating that "any performance or disciplinary problems will result in immediate termination," cannot be used by LES to defeat the contract's guarantee of right to grievance.
 
 
 25
 The standard for reviewing the district court's interpretation of the contract is to view the evidence in the light most favorable to the prevailing party and to affirm unless the factual findings of the trial court are clearly erroneous. St. Clair v. Exeter Exploration Co., 671 F.2d 1091, 1096 (8th Cir.1982).
 
 
 26
 As noted above, the district court construed the reinstatement letter and memo (reinstating seniority status and benefits) to be part of Tautfest's employment contract. This construction appears to be proper in that Tautfest accepted reinstatement to the LES work force according to the terms of the reinstatement letter. Based on this construction, the court then determined that the employment contract as a whole gave Tautfest no assurance of continued employment or right to grievance, and further, set no limitation of causes for discharge. In essence, the court found that the terms of probation in the reinstatement letter modified or superseded the previous employment contract (LES policy manual) to the extent that its terms were inconsistent with Tautfest's new disciplinary probation status. Finding the manual to be silent as to the specific rights of employees on disciplinary probation, the court applied the usual and accepted meaning of "probation" in an employment context:
 
 
 27
 "Probation" * * * is a period of testing and evaluating to determine whether a person is fit for a permanent position. If one on probation were accorded a presumption of fitness for permanence, probation would have no purpose. Temporariness is the essence of probationary status and the employer is not limited to just cause as a ground for ending that temporary status.
 
 
 28
 Tautfest v. City of Lincoln, supra, No. CV82-L-134, slip op. at 3.
 
 
 29
 We find the district court's interpretation of the contract to be well reasoned and supported by the evidence. We find no "guarantee" of grievance rights for employees on disciplinary probation in the LES manual, as Tautfest claims. Accordingly, we affirm the district court's findings on this aspect of the case.
 
 
 30
 In conclusion, we find no error in the district court's determination that due process did not attach to Tautfest's probationary status and that there was no breach of the collective bargaining agreement by virtue of Tautfest's termination without a hearing.
 
 
 31
 Affirmed.
 
 
 
 [1]
 The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska
 
 
 [2]
 The district court applied the test set forth in Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), which provides that a plaintiff may establish a property interest in continued employment if there are rules or mutually explicit understandings that would support his claim of entitlement at a hearing